THE UNITED STATES, APPELLANTS, v. CHRISTIAN ROSELIUS, ABIAL. D. CROSSMAN, WILLIAM E. LIVERIDGE, FRANCOIS B. D'AUTUIN, BENJAMIN C. HOWARD, JOHN SPEAR SMITH, BRANTZ MAYER, JOHN GIBSON, AND R. R. GURLEY, EXECUTORS OF JOHN McDONOGH, DECEASED.

Under the laws of 1824 and 1844, relating to the confirmation of land titles, where a claimant filed his petition, alleging a patent under the French government of Louisiana, confirmed by Congress, and claiming floats for land which had been sold, within his grant, by the United States to other persons, the mere circumstance, that the court had jurisdiction to decree floats in cases of incomplete titles, did not give it jurisdiction to decree floats in cases of complete titles.

This title having been confirmed by Congress, without any allowance for the sales of lands included within it, the confirmation must be considered as a compromise accepted by the other party who thereby relinquished his claim to floats.

If the title be considered as a perfect title, this court has already adjudged (9 How. 143) that the District Court had no jurisdiction over such titles.

The claimant in this case prayed that the side lines of his tract might be widened by diverging instead of parallel lines; but this court, in this same case, formerly (3 How. 693) recognized the validity of a decree of the Supreme Court of Louisiana, which decided that the lines should be parallel and not divergent. The District Court of the United States ought to have conformed its judgment to this opinion.

Moreover, the claimant in this case did not state in his petition what lands had been granted by the United States, nor to whom, nor did he make the grantees parties; all of which ought to have been done before he could have been entitled to floats.

THIS was an appeal from the District Court of the United States for the Eastern District of Louisiana.

The facts are stated in the opinion of the court.

It was argued by *Mr. Cushing*, (Attorney-General,) for the United States, who made the following points:

I. That the grant under which the claim is made being a complete and perfect grant, the court below had no jurisdiction.

II. That if the court had jurisdiction the grant is void, having been made by the French authorities subsequent to the treaty of Fontainbleau of 3d November, 1762, by which France ceded Louisiana to Spain, and the order of delivery, dated 21st April, 1764. 1 Clark's Land Laws, Appendix, 976; Montault v. United States, 12 How. 47; United States v. Pellerin, 13 How. 9.

III. That the Spanish authorities after the cession did not confirm or recognize the said grant as valid.

The proceedings before Livaudais did not operate as a confirmation. Under the Spanish rule, the authority over the lands was vested first in the governors of the province. See the Marquis of Grimaldi's Letter to Unzaga, of 24th August, 1770.; 2 White's Recop. 460. The authority was subsequently vested

in the intendant. See the royal order of 22d October, 1798; Ibid. 477–478. The certificates of Trudeau were not sufficient evidence to show that Governor Miro had confirmed or recognized the grant as valid.

Under the acts of 1824 and 1844, the District Court had no power to act, except in cases of claims under grants, concessions, warrants, or orders of survey.

V. With respect to the allegation in the petition, that the grant has been confirmed by an act of Congress of 11th January, 1820. Whether this be so or not cannot arise in this case, the jurisdiction of the court under the act of 1824, as revived by that of 1844, being limited to incomplete claims originating with the Spanish, French, or British authorities, which might have been perfected into a complete title under and in conformity to the laws, usages, and customs of the government under which the same originated, had not the sovereignty of the country been transferred to the United States. Act of 1824; 4 Stat. at Large, 52; Act of 1844; Ibid. 676.

VI. But as the petition claims opening and diverging side lines from the front to the rear, and avers that a large portion of the land had been sold by the United States, and claimed floats therefor, and the court below has decreed in favor of the claimant on both points, it may be that the object of the petition was to have these points determined under the grant. With respect to the first, there is nothing in the grant which calls for diverging side lines, and when this is the case, the side lines run parallel to each other. That the side lines in this grant run parallel was decided in the Supreme Court of Louisiana, in McDonogh *v.* Millaudon, which will be found reported in 3 How. 693.

As to the claim for floats, no individuals claiming lands under title from the United States having been made parties in the case, no decree for floats could be made. United States *v.* Moore, 12 How. 209

Mr. Justice CATRON delivered the opinion of the court.

John McDonogh claimed to be confirmed in a tract of land bounded in part by the river Mississippi; th    ont being 40 arpens more or less; bounded on the upper side, by a line running back from said river a distance of seventeen miles, and two hundred and twenty-seven perches, more or less, until it strikes the river Amitie, on a course by compass of north 35° west; on the lower side, by a line running back from said river Mississippi a distance of eighteen miles and twenty-two perches, more or less, until it strikes lake Maurepas, on a course by the compass of north nine degrees fifty minutes east; and bounded on the rear line by the river Amitie and lake Maurepas.

The petitioner represents that in the year 1739 Duport purchased the land from the Collopissa nation of Indians; and that said purchase was confirmed in the year 1769 by the French government by a regular and formal patent : and secondly, that the claim was duly presented to and approved by the board of land commissioners of the United States, who confirmed it for the whole quantity claimed, according to a plan of survey. And that said titles were also recognized and confirmed by an act of Congress of the 11th May, 1820. But the petitioner avers, that a large portion of said tract of land has been sold by the United States, or confirmed to actual settlers.

The district court found that McDonogh held under Duport by regular mesne conveyances, and showed a title to the land by patent, which was granted by the highest authorities in the province; that it was a complete and full title; and furthermore, "that the land claimed as per plan of survey on file herein was confirmed by the report of the land commissioners of the United States on the 20th of November, 1816."

The court below then proceeded to pronounce the grant of 1769 to be valid; and that the survey thereof, filed as an exhibit in the cause, indicates the metes and bounds, and the land is ordered to be located according to said survey, and to that extent the claim is confirmed. And then the decree proceeds to adjudge that for all lands within these bounds which have been sold or otherwise disposed of by the United States, the petitioner shall be authorized to enter other lands by floating warrants.

Assuming the foregoing facts to be true, the question presented is, whether jurisdiction existed to make the decree ?

The mere fact, standing alone, that the United States had sold or otherwise disposed of any part of the land here claimed, and that compensation could be made as provided by the 11th section of the act of 1824, does not give jurisdiction, as the power to award floating warrants is an incident to a case where jurisdiction exists to decree the lands claimed and to order that a patent therefor shall issue ; and if the power to divest title out of the United States is wanting, none exists to decree the floating warrants, because it must be first found and adjudged, that the petitioner has the better equity to the land of which the United States have deprived him by their grant to another. But, there is another consideration why this petitioner could not claim floating warrants. He sought a confirmation of his title from the United States, for the obvious reason that his grant from the French government, made in 1769, was invalid, as that government had no interest in the country in 1769, it having been ceded to Spain in 1763. And if McDonogh was

forced to go behind his French grant, and rely on his Indian pretension to claim, the probability was that he could establish nothing to support his assumption of title, and must fail altogether. Under these circumstances, the United States confirmed McDonogh's claim, without allowing him any compensation for such land as had been previously sold or disposed to others within the boundaries confirmed. He accepted the confirmation on these terms; and as we are substituted by the acts of 1824 and 1844, for the political power, and required to adjudge these claims, as Congress adjudged them before the act of 1844 was passed, we are bound to hold that, when our predecessors decided McDonogh's claim favorably, they awarded him all that he had a right to demand, and which he sanctioned by accepting the confirmation on the terms it was offered.

Nothing could be fraught with worse consequences as regards confirmations by Congress, or by commissioners acting by its authority, than to hold, that when a doubtful claim was confirmed on certain terms, and the claimant accepted these terms, and took the full benefit of the confirmation, that still he could come into the courts of justice and enforce his entire claim for the deductions made by Congress, as if no adjustment had been made. Such cases must stand on the footing of compromise, and all equities existing when the compromise was made, and not provided for by it, must be deemed to have been abandoned. If it were otherwise, then there would be no end of these pretensions to compensation, before Congress and the courts. But to hold that the confirmation was final, and conclusive of the whole claim, (as we think it clearly was,) then the country will, at last, find repose, and the cultivator of the soil will know from whom to buy, and take title. McDonogh's claim being compromised, the government had no duty imposed on it to compensate him in case of loss.

Jurisdiction is also wanting on other grounds. If the grant of the French government to Duport was a complete title, then no act on the part of the American government was required to give it additional validity, as the treaty of 1803, by which Louisiana was acquired, sanctioned perfect titles: nor was jurisdiction vested in the District Courts to adjudge the validity of perfect titles. This is the settled construction of the act of 1824, as was held by this court in the case of the United States v. Reynes, 9 How. 143, 144.

In the next place, McDonogh alleges that his title was confirmed by the United States in 1816, and again in 1820. The act of 1824 conferred jurisdiction on the District Courts to adjudge and settle the validity of imperfect claims against the United States as already stated. But where the claim had been

granted by an act of Congress, or by officers acting under the authority of Congress, and a perfect legal title vested in the grantee, no power was conferred on the courts to deal with such title, because it needed no aid. And because such an assumption would of necessity claim power in the courts to modify the grant made by Congress, in every respect, or to set it aside altogether.

On this assumption, the District Courts might have been called on to readjudge every claim that Congress had confirmed. The legislature contemplated none of these things, when passing the acts of 1824 and 1844.

McDonogh informs us, in his petition, that he did not claim a decree for any land covered by his grant, but that he sought a decree for land warrants to be located on other lands for such parts as had been sold or disposed of by the United States within the bounds of his claim. And as incident to this claim for compensation, he prayed that his side lines might be widened, so that the upper line would run north 35° west; and the lower line, north 9° 50' east. These side lines are about eighteen miles long, and commence on the Mississippi forty arpens apart, but by widening the tract claimed, as decreed by the District Court, is something like fifteen miles wide where the lines terminate on the river Amitie, and lake Maurepas. The boundaries were thus settled by the court below, according to the power conferred by the second section of the act of 1824, sweeping over a large tract of country, and covering many lands granted to others by the United States.

The petition in this case was filed in June, 1846; at the previous term of the Supreme Court of the United States, the cause of John McDonogh, against Milaudon, was decided, on which this court was asked to revise a decision of the Supreme Court of Louisiana, which settled the boundaries of McDonogh's grant; holding that the side lines could not diverge, but that the land must be of equal width in front and rear, and the side lines parallel to each other throughout. The question in the State Court being one of boundary, and not involving any consideration that could give this court cognizance, under the 25th section of the Judiciary Act, the writ of error was dismissed for want of jurisdiction.

As the decision of the Supreme Court of Louisiana had settled the question of boundary, we think the District Court should not have disregarded that decision, and involved the government in such serious consequences as that of making compensation for lands not covered by McDonogh's grant.

If none of these objections existed, however, there is another, that would preclude the petitioner from having compensation

in land warrants. He does not state what lands the United States have granted to others, within his claim; nor who the owners are; neither does he make them parties. These steps were required by the act of 1824, and not having been taken in this instance no general decree could be made for floating warrants, as was done by the District Court. We so held in the case of the United States *v.* Moore, 12 Howard, 223.

For the reasons stated, it is ordered, that the decree be reversed, and the petition dismissed without prejudice to McDonogh's claim.

### *Order.*

This cause came on to be heard on the transcript of the record, from the District Court of the United States for the Eastern District of Louisiana, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed, by this court, that the decree of the said District Court, in this cause, be, and the same is hereby, reversed, and that this cause be, and the same is hereby, remanded to the said District Court, with directions to that court to dismiss the petition in this case, without prejudice to the rights of the petitioner.