## J. J. AUSTIN v. AMANDA B. DUNGAN ET AL.

1. EVIDENCE.—Parties to a suit are not affected or bound by evidence, however conclusive it may seem to be, given in another case with which they had no connection, even if the record in such case showing such facts had been offered in evidence on the trial.

2. SURVEYS IN MERCER'S COLONY.—From the fact that a survey in Mercer's colony bore date May 8, 1846, it will not be presumed in favor of a colonist claim that the survey was void, or not upon a valid file made on the land before the law of 25th June, 1845, protecting from general location lands in Mercer's colony.

3. ABANDONMENT OF SURVEY.—A survey in Mercer's colony being in conflict with an older survey, patent thereon was refused on the field-notes; subsequently a resurvey was made of that part of the land not in conflict, on which patent was issued, the original field-notes not being found in the land office, and the register of their

return showing an erasure of the original number of acres and the reduced number inserted instead: *Held*, That the resurvey was a presumptive relinquishment of that part not included in the resurvey.

4. SAME.—A subsequent appropriation by the original claimant should be initiated by a file or location in the county surveyor's office, and not by indicating a claim to it in the land office upon the original field-notes and surveys abandoned.

5. POSSESSION OF UNLOCATED LANDS—LIMITATION.—It was error to charge the jury that "by a survey and return of the field-notes and certificate to the land office the State was informed of the extent of the claim, and in that event possession for ten years would give title, upon which suit could be maintained for the land, unless the possessor had abandoned his claim under the survey."

6. SAME.—Nor will the continued occupation of such abandoned part confer title under the statutes of limitation, unless the land had been located by some other claim severing it from the public domain.

7. POSSESSION OF PUBLIC DOMAIN.—The State is not bound to evict parties unlawfully holding possession of public lands before granting them to others, there being nothing prohibiting the State from granting lands held in possession, the grantee from the State takes against the party in possession.

8. TITLE BY LIMITATION.—The court does not hold that where possession has been held under a location and survey for the time requisite to perfect title under the statutes of limitation, that such title could be defeated by the owner of the certificate fraudulently removing the certificate and abandoning the survey.

APPEAL from Rains.  Tried below before the Hon. Z. Norton.

May 8, 1846, Graham located a conditional certificate for six hundred and forty acres of land in part on the two hundred and seventy-three acres in controversy in this suit.

September 28, 1853, W. B. Miller, the deceased husband and father of the plaintiffs, laid a Mercer's colony certificate on the same two hundred and seventy-three acres. He made a location of four hundred and fifty-eight acres, two hundred and seventy-three of which conflicted with the Graham survey.

April 7, 1856, Miller made a resurvey of one hundred and eighty-five acres, covering to that extent his former survey

of four hundred and fifty-eight acres, and that part not in conflict with the Graham survey, and July 25, 1856, obtained a patent for it. The field-notes of the original survey seem to have been withdrawn from the land office, and the entry on the books of surveys returned show four hundred and fifty-eight erased and one hundred and eighty-five inserted.

In the spring of 1874, the plaintiffs obtained a duplicate certificate for the two hundred and seventy-three acres in conflict with the land in controversy in this suit, but afterwards they returned it to the General Land Office, and had it placed by the commissioner, June 24, 1874, in the Miller file, No. 2268.

February 4, 1873, the appellant located a certificate upon this land.

March 9, 1874, the plaintiffs, the surviving wife and heirs of W. B. Miller, brought this suit. They alleged that they were in possession of the Austin location, and that they feared Austin would get a patent; that his location was a cloud on their title; with prayer to have the Austin location declared null, and that they be quieted in their possession. Austin plead general denial.

March Term, 1875, it seems that there was a mistrial.

March 16, 1875, plaintiffs filed an amended petition, alleging the settlement of Miller and wife in Mercer's colony on the land in dispute, his improvements, his said location, &c., and that if there was any prior location on the land in controversy, the same was void, and assigned reasons therefor, and, among others, "Because, after the making of the Mercer colony contract, land in the colony was not subject to location, except by Mercer colonists."

They also alleged their possession of the land from the time of their settlement in 1846 adverse to the defendant and all the world, and that more than ten years had elapsed since such settlement, and they relied on the 17th section of the statutes of limitation.

The additional facts and the charge of the court are given substantially in the opinion.

The jury found as follows: "We, the jury, find that plaintiffs are entitled to be quieted in their title to the land in dispute in consequence of their possession of the same for ten years preceding this suit."

Judgment was rendered on the verdict. Defendant's motion for new trial was overruled, and he appealed.

*J. J. Hill,* for appellant.—It is doubtful whether plaintiffs' petition shows any cause of action.

I. They did not institute proper suit. They could have maintained trespass to try title under art. 5303, Paschal's Dig.

II. The verdict of the jury was clearly against evidence. The legal effect of the resurvey of one hundred and eighty-five acres was an abandonment of the rest of the old survey. It was the province of the court to declare the legal effect of this resurvey, but having failed to do so, the jury could not attach other than its legal effect to it.

III. I am not able, with the limited investigation I have given the question, to perceive the correctness of that part of the charge which directs the jury that, if Graham failed to return his conditional certificate and field-notes to the General Land Office by August 1, 1857, his location became null. (Paschal's Dig., arts. 4573, 4574, 4575; see also Art. XIII, sec. 4, in regard to forfeitures, and Hancock *v.* McKinney, 7 Tex., 456.)

IV. The charge of the court, as regards the statute of limitation, was clearly erroneous. There is no doubt that the statute of limitation would run in favor of the plaintiffs in case of a valid location and survey, as against an adverse claimant, (Kimbro *v.* Hamilton, 28 Tex., 560,) but not against the State. No doubt, if the plaintiffs' location was valid, the statute commenced to run in their favor from the time of such location, they being in possession, as against the Graham claim; but not against the State of Texas and all the world, nor against the defendant. In order that plaintiffs' adverse

possession, as against Graham, could be counted against the defendant, there must be a privity between him and the defendant. There was no privity. Besides, the charge would indicate that the statute commenced to run in favor of the plaintiffs from the time of their settlement.

Miller's emigration and settlement in Mercer's colony gave him no right to any particular portion of the public domain.

*D. W. Crow*, for appellees.

1st. It is assigned as error for the revision of this court, that the court below erred in overruling appellant's general demurrer to appellees' original petition; this demurrer involves the question whether or not the facts set forth in said petition, regardless of form and regularity, constitute a cause of action, (Chitty's Pleading, 661; Gould's Pleading, 467; 1 Tex., 367; 2 Tex., 485; 5 Tex., 276, 582; 7 Tex., 517.) Appellees' original petition set forth and alleged a claim to the land in dispute, by virtue of a location and survey made by virtue of a valid certificate; and most clearly this was sufficient grounds to maintain a suit. (Paschal's Dig., 1st vol., 5301; 5 Tex., 480; 20 Tex., 635; 23 Tex., 29; 28 Tex., 560.)

2d. In 1849, the time that W. B. Miller and his wife, Amanda Dungan, one of these appellees, settled on the land in dispute, it was within the limits of the Mercer's colony, and not subject to any other location except a Mercer's colony certificate; (Paschal, vol. 1, 889; 21 Tex., 539; 25 Tex. Supp., 408;) and at the time that the surveyor of Nacogdoches county made the survey for Graham, in 1846, he had notice of the act of the 25th of June, 1845, above referred to. (Sherwood *v.* Fleming, 25 Tex. Supp., 408,) and there could be no legal excuse for the Commissioner of the General Land Office refusing to patent this land to W. B. Miller, under whom these appellees claim.

3d. There being a location, by virtue of a valid certificate, on the land in dispute, had Miller, during his lifetime, or

have these appellees, since his death, abondoned the same? Every particle of evidence goes to show no such intention. Remaining on the land since 1849, paying taxes on the same, their repeated efforts to obtain a patent, their employing lawyers to obtain a patent, their allowing the certificate which had been located to remain in the land office, their determination to remain on the land on which most of them had been born, unless ejected by the strong arm of the law, go most clearly to prove to the mind, that there was no intention of abandonment; and without the intention, there is no abandonment. (38 Tex., 410.)

4th. The 14th section of the law of limitation, (Paschal's Dig., 4621,) unlike the 15th, 16th, and 17th sections of said act, does not exclude from its terms the State; and where no exception is made in favor of the State, she must pursue her remedy as other suitors. Miller, and those claiming under him, could not, by any lapse of time, under the 17th section of the law of limitation, have claimed six hundred and forty acres of land; but the amount, be it great or small, set out by definite bounds by a location and survey, under a valid certificate, with no intention of abandonment in ten years, under the 14th section referred to, would be a bar to the State under the presumption of a grant. (16 Tex., 305; 9 Tex., 378; 5 Tex., 414; 7 Tex., 288; 1 Greenl. Ev., sec. 40.) Now, in the case at bar, these appellees have been in possession and cultivating the land in dispute, by well-defined boundaries and lines, under a location and survey, by virtue of a valid certificate, with no intention of abandoning the same for more than twenty-seven years—now, in the language of Mr. Justice Walker, in Turner v. Rogers, 38 Tex., 584, where the appellee held under a continued possession and cultivation of the land for thirty years, "the right of entry to those laboring under no disability was certainly tolled long before the appellant entered upon the land; and under our law, the right of entry is not only tolled, but the right of action accrues to one who has been ousted of such possession.

16

Our statute confers this right after ten years' uninterrupted adverse possession." (Jones v. Borden, 5 Tex., 410; Lewis v. San Antonio, 7 Tex., 288; Morris v. Byers, 14 Tex., 278; Morris v. Brinlee, 14 Tex., 285.)

Moore, Associate Justice.—This suit was brought by appellees, to quiet their possession, and to remove a cloud cast by appellant upon their title to two hundred and seventy-three acres of land, by causing the same to be located and surveyed on the 7th of February, 1873, as vacant and unappropriated public domain, by virtue of a certificate for three hundred acres of land, issued by the Commissioner of the General Land Office to said Austin, as assignee of Isaac P. Langston, and the return of the field-notes of said survey, as corrected October 17, 1873, to the General Land Office, with the intention of obtaining a patent for said land, to which appellees claim to have a prior equitable title.

It appears from the statement of facts, that the two hundred and seventy-three acres of land in question is a part of a tract of four hundred and fifty-eight acres, surveyed on the 28th of September, 1853, for William B. Miller, the former husband of one of the plaintiffs and father of the others, issued to him as a colonist, in Mercer's colony. The field-notes of the survey, together with the certificate by virtue of which it was made, was shortly thereafter duly returned to the General Land Office. But on examination by the commissioner, on application for a patent, it was found that the survey conflicted, to the extent of two hundred and seventy-three acres, (the land now in controversy,) with a survey of six hundred and forty acres, made May 8, 1846, for J. F. Graham.

Appellees insist that this survey was illegal and void, and presented no valid objection to the patenting of the land to said Miller, because, as they say, it appears from the case of Melton v. Cobb, 21 Tex., 539, that the surveyor who made the survey had notice of the act of 25th of June, 1845, and knew the land was within the limits of Mercer's colony, and

could not be legally surveyed on said Graham's certificate when he made the survey. But evidently the parties in this suit are not affected or bound by evidence, however conclusive it may seem to be, given in another case, with which they had no connection, even if the record of such case had been offered in evidence on the trial. If, however, it had been shown that the surveyor knew the land was within the limits of Mercer's colony when he surveyed it for Graham, it does not follow that the survey was illegal, and did not segregate the land from the public domain. For aught that is shown to the contrary, the land may have been appropriated by Graham, by a valid file of his certificate upon it, prior to the law authorizing its appropriation under the colonial contract with Mercer.

It further appears that Miller, finding that he could not get a patent for said four hundred and fifty-eight acres of land, for which he had caused the field-notes, together with his certificate, to be returned to the General Land Office, as aforesaid, on account of its conflict with said Graham's survey, on the 7th of April, 1876, caused a survey of that part of the land not in conflict with the Graham tract to be made, and the field-notes of the last survey to be returned to the General Land Office; and on the 26th of July, 1856, a patent was granted him for the land thus resurveyed.

The original field-notes of Miller's first survey for four hundred and fifty-eight acres, the commissioner testifies, is not now in the land office, and there is no record or memorandum in the office showing when or by whom it was taken out. But from the erasure in the register, showing the return of the certificate on the 23d of February, 1854, and that only one hundred and eighty-five acres were appropriated by it, instead of four hundred and fifty-eight acres, as originally entered, it is not unreasonable to infer that the field-notes of the original survey were withdrawn for correction, on account of the conflict with the Graham survey, and the field-notes of the second survey were returned to the

office in their stead. The last survey was evidently received and acted on in the office, as the corrected survey of the land which Miller desired to appropriate by his certificate at that time. Whatever may have been Miller's purpose and intention, it cannot be held that the first of these surveys can be regarded as a subsisting and continuing appropriation of the entire land after he applied for and obtained the patent upon this resurvey; and although it appears from the deposition of the Commissioner of the General Land Office that the land appropriated by Graham's survey became a part of the public domain on the 1st of August, 1857, by his failure to comply with the provisions of the act of August 30, 1856, it does not appear that either Miller, in his lifetime, or the plaintiffs, since his death, by any action of theirs in the General Land Office or in the county surveyor's office, previous to the survey of the land for the defendant, indicated a purpose to appropriate or claim it under or by reason of the original survey.

The idea which seems to be conveyed in the charge of the court, that if the certificate and field-notes of the original survey were in the land office when the land became vacant, and Miller had not intended to abandon, but still insisted on his right to the land, he would be entitled to it, was unquestionably erroneous, and calculated to mislead the jury.

The resurvey and patent of a part of the land was a presumptive relinquishment by Miller to that part of it not embraced in the resurvey. A subsequent appropriation of it should be initiated by a file, location, or survey in the county surveyor's office, and not by indicating a claim to it in the General Land Office. If there were no adverse claimant, plaintiffs would have to cause a survey of it to be made by the county surveyor, and the field-notes recorded and returned to the General Land Office, before he could get a patent.

The plaintiffs having failed to appropriate the land by a valid file, location, or survey prior to its survey for defend-

ant, must rest their right to the relief given them by the decree, upon their long possession of the land prior to its survey for appellant.  The testimony shows that Miller settled with his family upon the land sometime in 1849, his dwelling and a part of his farm being on the one hundred and eighty-five acres survey, and the other part on the tract here in controversy; and that he and the plaintiffs have been in possession of the land located by appellant, by themselves and tenants, from that time until the trial of the case in the District Court.  The actual possession by plaintiffs, it must be conceded, was sufficiently long to give title by limitation, if in view of the facts of the case their possession can be held to have this effect.

The charge of the court upon the question of limitation was certainly loose and indefinite. . If we understand it, the judge intended to convey the idea that if a survey of the land had been made, and the field-notes and certificate returned to the General Land Office, the State was thereby notified of the extent of the claim; and in that event possession for ten years would give a title upon which such a suit as this could be maintained, unless it was shown that the possessor had abandoned all claim by virtue of such survey.  To give the charge practical application to this case, we must suppose the court intended the jury to understand, if the State was notified of the boundaries of the claim, by the return of the field-notes to the General Land Office, it was immaterial whether the survey was legal or not; or that whether the right to be barred was in existence, or was subsequently acquired from the State, the party in possession would be entitled to the protection of the statute; for if the survey was valid and the land was vacant, unless it was afterward abandoned, the certificate and survey would give a title which would, not need the aid of the statute of limitations for its support; and if there was an existing adverse claim, possession, under the circumstances indicated, for less than ten years, would complete the bar.  Hence, we suppose the court was of

the opinion that although the survey, by virtue of the certificate, was inoperative to sever the land from the public domain, or to confer any right upon the party claiming under it, beyond showing the extent to which he got possession by his entry, yet ten years' possession would give title, or bar any one subsequently acquiring it from the State.

If this was the idea intended to be conveyed, it is evidently erroneous. It is unnecessary for us to say that there is nothing in the decisions of this court to give countenance to the supposition that a grant of the public domain will be presumed from ten years' possession. Nor is there anything in the statutes, or in the practice and usage of the State, in the granting of land, to authorize the inference that the State must eject trespassers, or recover possession of the public land from occupants, before it can make a valid grant or conveyance of it to other parties. The common-law rule, that the owner cannot make a valid conveyance of land in the possession of a disseizor, is not recognized with us as between individuals, and certainly it has no application to the granting of land by the State. It follows, as a necessary consequence, that a purchaser from the State will not be barred; for it would be tantamount to a denial of the title of the State or its right to convey, to say that the bar, though not directly applicable to the State, would take effect immediately on the title vesting in the purchaser or grantee from it.

It is not to be understood, however, from what is here said, that when there is an existing title or claim to the land, against which limitation will run, that this title may not vest in the occupant by ten years' adverse possession; or that when the title has been thus acquired by limitation, it can be defeated by the original owners abandoning the location and survey, and causing the certificate to be re-located elsewhere.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.