## D. SULLIVAN ET AL. v. THE STATE OF TEXAS.

### Decided December 6, 1905.

**1.—Action by State—Defining Boundaries—Pleading.**

In a suit brought by the State, by the Attorney-General, under sec. 11, ch. 4, Acts 1st Called Session, 27th Leg., p. 6, to determine the location and boundaries of land claimed under title from the Mexican Government and recover that claimed under but not included in such grant, the excess sued for never having been previously segregated or defined, the petition was not subject to demurrer for failing to set up the boundaries of the land sought to be recovered.

**2.—Boundaries—Conflicting Evidence—Findings by Court.**

Findings by the trial court, supported by evidence, as to the original location of the lines of a grant under which defendants claimed, will not be set aside for mere conflict in the evidence.

**3.—Mexican Grant—Act of Confirmation—Resurvey.**

The Act of February 10, 1852, confirming grants of land made by the Mexican Government before annexation of the territory and providing for resurvey and return of field notes thereof by the claimants, and issuance of patent thereon, does not constitute an agreement by the State with the owners that they should be entitled to all the land embraced in such resurvey.

**4.—Same—Agency.**

The Act of February 10, 1852, confirmed grants of land by the Mexican Government only to the limits of such original grant; and, in the resurvey therein provided for, the surveyor was not the agent of the State—rather of the claimant—and was without authority to bind the State by a survey extending beyond the limits as originally granted.

**5.—Same—Estoppel.**

Whether or not the State can be bound by the acts of the Commissioner of the General Land Office, the evidence here considered is held not to show such acquiescence by him in the resurvey, under the Act of February 10, 1852,

of a grant made by the Mexican Government, as to prevent the State, by estoppel, from recovering lands not covered by the grant as originally located.

**6.—Mexican Grant—Resurvey—Patent.**

The owners of land granted by the Mexican Government, who, under the Act of February 10, 1852, confirming and providing for resurvey and patent of such titles, had accepted patents from the State to the land as resurveyed, relinquished thereby all claim to lands not included in the boundaries as patented, though they might have been embraced in the boundaries of their original grants, and held by valid title thereunder but for the acceptance of such patents.

ON REHEARING.

**7.—Constitutional Law.**

Section 11, ch. 4, of the Act of the 27th Leg., 1st Called Session, as applied in this case, authorizing suit by the State to recover lands claimed under Mexican grants which did not embrace them in their boundaries as originally surveyed and granted and to identify the boundaries of such grants where the evidence on file in the General Land Office does not sufficiently identify them, neither impairs the obligations of the State's contract as evidenced by the Act of February 10, 1852, for confirmation of such titles, nor deprives the claimants of their property without due process of law, nor denies them the equal protection of the law.

Appeal from the District Court of Travis County. Tried below before Hon. V. L. Brooks.

*J. C. Sullivan* and *Ogden & Brooks,* for appellant.

*R. V. Davidson,* Attorney-General, for appellee.

No briefs reached the reporter.

EIDSON, ASSOCIATE JUSTICE.—This is an action brought by the Attorney-General in behalf of the State of Texas to determine the exact location and boundaries of a grant emanating from the Mexican Government, under which appellants claim title to the land in controversy, and to recover the quantity of land in the tract claimed by appellants in excess of the quantity embraced within the exact boundaries of the original grant. There was a recovery of such excess by the State in the court below, and defendants have appealed to this court.

Appellants' first assignment of error complains of the action of the court below in overruling their general demurrer to plaintiff's petition, their contention being that the petition does not sufficiently describe the land sought to be recovered. The petition alleges "that on the first day of January, A. D. 1890, the State of Texas, plaintiff herein, then was and still is the owner in fee simple (the same belonging to the common free school fund of the State of Texas) of a certain tract of land situated in the county of Hidalgo, in the State of Texas, and particularly described as follows: (Here specific metes and bounds are given), containing 55,500 acres of land.

"That plaintiff was in possession of said land, and is now entitled to possession of the same; that in the said 1st day of January, A. D. 1901, the defendant, without authority of law, entered upon said land and dispossessed the plaintiff thereof, and held, occupied and claimed the

same adversely to plaintiff, and is still so doing, to plaintiff's damage in the sum of twenty thousand dollars.

"That the rental value of said land is 5 cents per acre per annum.

"That as plaintiff is informed and believes, and here charges, the defendant claims title to said land, and to be entitled to the possession thereof, by virtue of a grant from either the Spanish or Mexican Government, made for six and one-half leagues of land, to Pedro de la Garza, and plaintiff here admits that there was such a grant in favor of the party named for the amount of six and one-half leagues; that said grant was confirmed to the said original grantee thereof, and to his heirs and legal assigns, by the State of Texas, by virtue of an Act of the Legislature of the State of Texas of the 10th day of February, A. D. 1852, for the full amount of six and one-half leagues, and no more.

"That by the law of February 10, 1852, above referred to, said Pedro de la Garza, or his heirs or legal assigns, as the case may have been, was required to have the said six and one-half leagues of land surveyed by the district or county surveyor of Starr County, in which said land at that time was situated, and upon return of the proper field notes thereof to the General Land Office the Commissioner was authorized to have the same plotted on the maps of his office, and to issue patents for the same in accordance with the existing laws, upon payment by the owner of said land of all the taxes due on the same from the date of the organization of the said county.

"Plaintiff further alleges that the defendant, claiming under and by virtue of said grant and the confirmation thereof, has taken possession of a great deal more land, which really belongs to the State of Texas, than the said six and one-half leagues, but that neither the said defendant nor anyone else has ever segregated from the public domain the amount of land which can be legally held by virtue of the aforesaid grant.

"Premises considered, the State of Texas, plaintiff herein, prays that the defendant be cited to answer this petition as required by law; that upon final hearing thereof the State of Texas, plaintiff herein, have judgment against the defendant for the recovery of the title and possession of all of said land in excess of the six and one-half leagues, with writ of possession for the same, and damages, and for the rental value of the use and occupation of such excess, together with ten percent thereon as attorney's fees, for costs of suit, and for all other and further relief to which plaintiff may be entitled, both in law and in equity.'

Section 11, chapter 4, Acts of the First Called Session of the Twenty-seventh Legislature, page 6, provides as follows: "The Attorney-General of this State is hereby directed and required to institute and prosecute, in the name of the State of Texas, such suits as may be necessary to recover from the person or persons in possession thereof, or claiming title thereto, all lands which are held or claimed under titles emanating from the Spanish or Mexican Governments, where no valid evidence of such grants are to be found in the records or among the files of the General Land Office; and also such suits as may be necessary to determine the exact location and boundaries of such lands, where the evidence on file in the General Land Office does not sufficiently identify

the land claimed, and such suits shall be brought, prosecuted and tried in the District Court of Travis County, Texas."

This provision authorizes suits in two instances: In one for the recovery from the person or persons in possession thereof, or claiming title thereto, of all lands which are held or claimed under titles emanating from the Spanish or Mexican Governments, where no valid evidences of such grants are to be found in the records or among the files of the General Land Office; and in the other, when it is necessary to determine the exact location and boundaries of such lands, where the evidence on file in the General Land Office does not sufficiently identify the land claimed. The allegations of the petition show that one object of the suit was to determine the true location and boundaries of the grant emanating from the Spanish or Mexican Government, and under which appellants claim the land in controversy. Evidently this was authorized by the last clause of the provision above quoted. It also appears from the allegations of said petition that the appellants are claiming more land than they are entitled to by virtue of said grant, and that no legal survey of said grant has been made and field notes thereof returned to the General Land Office, as required by law, and that such excess belongs to the school fund, and its recovery is sought in this suit. This allegation is sufficient to authorize the suit for said excess under the first clause of the above quoted provision of law, and also under section 8, chapter 11, Laws First Called Session, Twenty-sixth Legislature, page 33, which authorizes the Attorney-General to bring suits for lands belonging to the public free school fund.

We think the allegations of the petition were sufficient to authorize the court to determine the true location and boundaries of the six and one-half leagues of land to which appellants were entitled under the legislative act of confirmation, and to decree to the appellee the excess over that quantity in the tract described in the petition and claimed adversely by appellant; and, therefore, the petition was not subject to a general demurrer. Appellants' claim to the land in controversy emanates from a Mexican grant of six and one-half leagues to Pedro de la Garza, made in 1832, which was confirmed by an Act of the Legislature of the State of Texas on the 10th day of February, 1852. This Act provides "that it shall be the duty of those claiming any of the lands named in this Act to have the same surveyed by the district or county surveyor of the county in which the same may be situated, and upon the return of the field notes thereof to the General Land Office the Commissioner is hereby authorized and required to have the same plotted on the maps of his office, and issue patents for the same in accordance with existing laws, provided that no patent shall issue for a less amount than the original grant; that the owners of said land shall be required to pay the taxes due on the same from the date of the organization of the respective counties herein mentioned, which taxes shall be paid and legal vouchers for the same exhibited to the Commissioner of the General Land Office before the patent for the same shall issue."

In pursuance to this provision a survey was made by Felix A. Von Blucher, deputy district surveyor of Cameron Land District, in May, 1859, the field notes of which, with a map or sketch accompanying same,

were filed in the General Land Office August 5, 1869, having on them the following endorsements:

"File 545, San Patricio, 1st Class. Field Notes 8 Leagues. Pedro de la Garza, filed August 5, 1869.

"It appears, according to Antonio Garza field notes 1-556, that these field notes are *'correct'* (evidently for "corrected"), but not returned yet. April 6, 1871. M. Stakeman, confirmed for 6½ leagues.

"Closes partly all, but the approximate area found with apportioning errors is 267,552,959 sq. vrs., equals 10 leagues 17½ labors, or 55,-252,959 sq. vrs. too much. August 21, 1869. Richardson, $2."

The tract of land described in plaintiff's petition, a part of which it sues for in this action, is substantially the same as that described in the field notes of Blucher. This land has never been patented by the State of Texas. The Mexican grant was made by the State of Tamaulipas for six and one-half leagues of pasture land, and is in the name of Santa Rosa de Arriba. The land embraced in this original grant was surveyed by Antonio Canales, Surveyor-General for the State of Tamaulipas, December 5, 1832, and field notes made out, with a map accompanying same, showing the boundaries and configuration thereof and the quantity to be 6 leagues, 20,782,500 square varas. The survey made by Blucher contains 10 leagues and 17½ labors of land.

There is a forfeited survey made under a Mexican grant lying immediately east of the Arriba, in the name of Santa Rosa de Abajo, the territory of which has been covered by the location of railroad certificates, and east of the Abajo are a number of surveys based on Mexican grants which have been confirmed and patented by the State of Texas; and on the west of the Arriba survey are situated the Tule and Encinal surveys, which are confirmed and patented Mexican grants, and numbers 155 and 156 Texas Mexican Railroad Co. surveys, which are patented.

Appellee claims that, by locating the Arriba survey according to the survey made by Canales, and locating the surveys on its east and west according to the field notes of their patents, there will be found to exist a vacancy on the east and west of the said Arriba, as found by the court below.

The appellants claim that the survey made by Blucher practically conforms to the survey made by Canales. The court below, in rendering the judgment, found against appellants' contention and in favor of that of appellee. The question as to whether the true location of the Arriba survey, as surveyed by Canales under the Mexican grant, was where the court below found it to be, was one of fact, to be determined from all the evidence adduced upon the trial upon that issue, and we think that the finding of the court, locating it so as to show the vacancies on its east and west, embracing the land for which judgment was rendered for the plaintiff, is supported by the evidence. The testimony is conflicting as to the exact location; and, in some instances, as to the identity of certain points and natural objects called for in the field notes of the Arriba and previous and surrounding surveys; but the solution of such conflict was peculiarly the province of the court below trying the case without a jury, and its action in solving the conflict against appellants will not be disturbed by this court. And the credi-

bility and weight to be given to the testimony of certain witnesses who testified in reference to finding rocks at or near points claimed by appellee to be the corners of certain surveys, were also matters for the determination of the court below; and there is nothing in the record to justify this court in holding that the court below should not have considered such testimony. The survey provided for in the act of confirmation was to be made of the land originally granted by the Mexican authorities, and could not legally include any other land. (Clark v. Hills, 67 Texas, 145, 146.) And if the survey caused to be made by the owners of the grant in this case under the act of confirmation included other or more land than the original grant and survey made by virtue thereof, it would be void as to such other land or excess.

The judgment of the court below involves a finding that the evidence on file in the General Land Office does not sufficiently identify the land claimed by appellants, and we think its finding in this respect is supported by the evidence. Appellants contend, under various assignments of error, that the provisions of the Act of 1852 confirming the grant under which they claim, and providing for the survey of the land embraced in said grant, constituted a valid and binding agreement upon the part of the State with the owners of said grant,-that they should acquire or be entitled to the land embraced in the survey made in pursuance to the provisions of said Act. We do not think this contention of appellants is sound. Evidently the right to the land was not dependent upon the survey, and the survey only became important when the land had not been previously surveyed, so as to segregate it from the adjoining territory, or in the event the description of the land in the former survey was so vague as to require a survey to designate and fix its boundaries with certainty. (Clark v. Hills, supra, 146; Waterman v. Smith, 13 Cal., 373; Morrow v. Whitney, 95 U. S., 554; West v. Cochran, 17 How., 403; Langdeau v. Haynes, 21 Wall., 529.) The land embraced in the grant had been properly surveyed and segregated from other territory prior to the act of confirmation, and the only purpose of the resurvey after the confirmation would have been to retrace, remark, and thus make plain, the boundaries of the original survey. The act of confirmation does not make the surveyor the agent of the State so as to bind it by his act in surveying the land. According to the common acceptation of the language employed in said act, he is made the agent of the claimant of the land, as the duty to have the survey made is imposed upon such claimant. In our opinion, the contract or agreement embraced in the act of confirmation upon the part of the State only extends to a relinquishment of the land embraced in the original grant. (Clark v. Hills, supra, 145; Ryan v. Carter, 93 U. S., 82; Langdeau v. Haynes, supra, 529.)

Appellants also contend that the State is estopped from claiming the excess in the quantity of land embraced in the Blucher survey over that included in the original grant and survey thereunder, because of the acts and conduct of the Commissioner of the General Land Office in reference to the Blucher survey; and the failure of the State to assert title to such excess prior to the institution of this suit, which, they claim, constituted an acceptance and recognition by the State of the correctness of the Blucher survey. If the doctrine of estoppel in pais would,

under any circumstances, apply to the State (which we do not decide), we are clearly of opinion that the evidence in this case falls far short of showing such estoppel. In fact, there is evidence tending strongly to show the disapproval by the State of the Blucher survey. The endorsements upon the field notes thereof above quoted, and the failure to patent the land according to said survey, are evidence of this character. The delineation of the Arriba survey on the map by the Commissioner of the General Land Office, while made after the Blucher survey, may have been intended to represent the survey, as originally made, conformably to the grant for six and one-half leagues. But, conceding that it was intended to represent the Blucher survey, such delineation was simply the unauthorized act of a ministerial officer, which could not bind the State. Neither do the calls for the lines of the Arriba survey, in the various patents issued by the State on surrounding surveys, constitute evidence of estoppel on the part of the State. These are all facts admissible in evidence on the question of the true location of the boundaries of the Arriba survey as originally made, but not as matter of estoppel. (Saunders v. Hart, 57 Texas, 10; Day L. & C. Co. v. State, 68 Texas, 553; Galveston, H. & S. A. Ry. Co. v. State, 36 S. W. Rep., 115; Cameron v. State, 4 Texas Ct. Rep., 91, 103-106.)

The holding of the court, in confining the surveys situated on the east and west of the Arriba to their boundaries as patented, was correct. The owners of these surveys, by the acceptance of the patents, relinquished all claims to any land that may have been included in the grant confirmed, but not embraced in their patents. (United States v. Roselius, 15 How., 31; Arguello v. United States, 18 How., 546; Forbes v. Withers, 71 Texas, 302.)

The question of boundary involved in the case of the State v. Russell (11 Ct. Rep., 869), cited by appellants, was one of fact, and the trial court held adversely to the State's contention; and this court simply held that such holding was supported by the evidence. (Id., 875.)

The contention of appellants that the Arriba survey is embraced in the external lines of a block of surveys, all made at the same time, with the intention of appropriating all the land within such external lines to the different surveys included therein, and that, therefore, the State is not interested in the true or exact location of the division lines between such surveys, is not supported by the evidence, in that it does not appear therefrom that the Arriba and surrounding surveys were made at the same time; and besides, the evidence shows that, according to the field notes of the surveys east and west of the Arriba, as patented, such surveys are separated from the Arriba as originally surveyed.

None of the appellants' assignments of error is well taken, and hence we overrule all of them. There being no reversible error contained in the record, the judgment of the court below is affirmed.

*Affirmed*

### OPINION ON MOTION FOR REHEARING.

All of the grounds embraced in appellants' motion for rehearing were passed upon and overruled in the original opinion in this cause except the following, which were for the first time presented in said motion:

"47.—The court erred in affirming the judgment of the court below, because the Act of the Twenty-seventh Legislature, section·11, chapter 4 of the First Called Session, as construed and enforced against this appellant is void, because in conflict with the Constitution of the United States, in that said Act as so construed and enforced impairs the obligation of a valid, subsisting and binding contract between the owners of the Santa Rosa de Arriba grant and the State of Texas, as evidenced by the provisions of an Act of the Legislature of the State of·Texas, of date February 10, 1852, and the survey of said Santa Rosa de Arriba by the official surveyor, under and in accordance with the provisions of the said Act of February 10, 1852, which said contract was entered into prior to the passage of the said Act of the Twenty-seventh Legislature, which, as so construed and enforced by this court against this appellant, is an attempt upon the part of the State of Texas to repudiate the said binding and subsisting contract, and impair the obligation thereof, and is, therefore, in violation of the Constitution of the United States, and contrary to the provisions of paragraph 1, section 10, of article 1 of the Constitution of the United States, and contrary to section 16 of article 1 of the Constitution of the State of Texas.

"48.—The court erred in affirming the judgment of the trial court, because the Act of the Twenty-seventh Legislature above referred to, as construed and enforced by this court, impairs the obligation of the valid and subsisting contract between the State of Texas and the owners of the Santa Rosa de Arriba, the El Tule and the San Antonio del Encinal, under the judgments of 1872 and 1873 and the surveys thereunder.

"49.—The court erred in affirming the judgment herein, because the Act of the Twenty-seventh Legislature above referred to, as construed and enforced against this appellant by this court, is void, contrary to and in violation of the Constitution of the United States, in that it deprives appellant of his property without due process of law, and without compensation.

"50.—The court erred in affirming the judgment in that the said Act of the Twenty-seventh Legislature above referred to, as construed and enforced by this court against this appellant, is in violation of and contrary to the provisions of the Constitution of the United States, and of the State of Texas, in that it denies to this appellant the equal protection of the laws of the land."

In the original opinion herein we construed the section of the Act of the Legislature referred to by appellant as authorizing the State to bring suits to determine the exact location and boundaries of lands held or claimed under titles emanating from the Spanish or Mexican Governments where the evidence on file in the Land Office does not sufficiently identify the land claimed. And, also, to bring suits to recover from the person or persons in possession thereof, or claiming title thereto, lands which are held or claimed under title emanating from the Spanish or Mexican Governments, where no valid evidence of such grants is to be found in the records or among the files of the General Land Office; and we held that there was sufficient evidence adduced upon the trial below to support the finding of the court that the evidence on file in the General Land Office does not sufficiently identify the land claimed by appellant. Hence this suit, when considered in reference to the facts

proven, was properly brought for the purpose of identifying the land claimed by appellant.

We also held in the original opinion that the evidence was sufficient to support the finding of the court that the tract of land claimed by the appellant embraced more land than the grant under which he claimed embraced, as originally surveyed, and which was confirmed by the Act of 1852; and, therefore, the suit, insofar as it was intended to recover for the State such excess, could be maintained under said law.

This court did not construe said section of the Act of the Twenty-seventh Legislature as in any manner impairing the obligation or contract of the State, as imposed upon it by the confirmatory Act of 1852; but, on the contrary, upheld and sustained such obligation by holding, in effect, that the State, by virtue of said Act, had relinquished to appellants' grantors the full quantity of land granted to them by the Spanish or Mexican Governments. The Act of 1852 did not impose upon the State the obligation to relinquish title to land not embraced in the original grant and survey, when the boundaries of such original survey can be traced and identified, although a resurvey, made under said Act of 1852, not accepted by the State, embraces other land.

Appellant's motion for rehearing is overruled.

Application for writ of error dismissed for want of jurisdiction.