## C. E. WRIGHT v. G. W. GALE.

Application No. 7310. Decided October 25, 1911.

1.—School Land—Sale—Segregating Excess.

In the absence of any provision in the Act of March 22, 1889, (Rev. Stats., arts. 4274, 4275, 4276) directing the Commissioner of the General Land Office how to proceed in making the segregation for the benefit of the State of the excess in a tract of school land sold by it, the Commissioner is to be controlled by those rules of justice and equity governing the acts of individuals dealing with one another in ordinary transactions. He is not clothed with arbitrary discretion. (Pp. 453, 454.)

2.—Same—Case Limited.

The case of Willoughby v. Long, 96 Texas, 196, did not involve any question

as to how the Commissioner should proceed in segregating the excess in a sale of school land, and remarks therein touching on that subject are obiter dicta. (Pp. 453, 454.)

**3.—School Land—Excess—Resale.**

The Land Commissioner, having ascertained the amount of excess in a section of school land sold by the State, may sell the same to the purchaser or his vendee, if they desire to purchase, at the same rate per acre as in the original sale, and without segregating it. (P. 455.)

**4.—Same—Segregation of Excess.**

If the Land Commissioner desires to segregate the excess in a school land section previously sold, the resurvey should commence at the beginning corner and lay off to the purchaser his quantum of acreage as nearly in a square as possible, leaving the rest to the State. (P. 455.)

**5.—Same—Irregular Survey.**

If the section, on account of irregularity of form, is incapable of being equitably divided between the purchaser and the State as owner of the excess, resort may be had to partition by judgment of court in a suit between the State and the purchaser, as in case of other owners in common. If by such division the excess lopped off should take the best land or the purchaser's improvements, he is protected against injustice by his preference right to purchase the excess at the original sale price. (P. 455.)

**6.—Vendor and Purchaser—Warranty—School Land—Excess.**

The vendee of a purchaser of school land part of which belonged to the State by reason of excess in the survey has no right to recover on his warranty, before eviction, the price he paid for the excess to which he acquired no title. But he may call upon his vender to buy in the excess from the State, or in default of his so doing may himself claim the right to purchase from the State at the price per acre of the original sale, and may then maintain suit on the warranty for the cost of so perfecting his title. (Pp. 455, 456.)

ON MOTION FOR REHEARING.

**7.—Segregation of Excess—Manner of Survey.**

In directing that the survey for segregating the excess in a survey should set off to the purchaser his proper number of acres, starting from the beginning corner, and as near as may be in a square form, it is not meant that this should be done irrespective of the shape in which it would leave the excess cut off for the State. This also should be left as near as possible in a square. (Pp. 456, 457.)

Application for writ of error to the Court of Civil Appeals for the Second District, in an appeal from Swisher County.

*Martin & Zimmerman,* for applicant.

*B. Frank Buie,* for defendant in error.

MR. JUSTICE DIBRELL delivered the opinion of the court.

This was an action in the District Court of Swisher County by C. E. Wright against G. W. Gale to recover the sum of $1035 for an alleged shortage of forty-five acres in the sale to him by Gale of 485 acres of land. The cause of action was based upon the allegation that forty-five acres of the tract of 485 acres was excess land, and by virtue of the Act of 1889 became the property of the State public school fund, and hence a failure of the warranty.

The facts disclosed that on July 9, 1898, one D. Currie made ap-

plication to purchase section No. 110, block M8, containing 640 acres, for $1 per acre, paying one-fortieth in cash and the balance on forty years time. The original survey was marked on the ground and the several lines given as 1900 varas each and the excess of forty-five acres was not disclosed by the field notes of the original survey.

The original purchaser, D. Currie, resided upon the section for three years as required by law, and made proof of such occupancy, and filed same in the General Land Office on November 11, 1901, and the commissioner issued his certificate thereon.

D. Currie, on November 6, 1906, conveyed this section of land to G. W. Gale, the defendant in this suit, Gale assuming the obligation of Currie to the State. On December 7, 1906, Gale conveyed to H. A. Robertson 200 acres of said section, describing the same by metes and bounds with its location on or near the base line of the section. On December 7, 1906, but subsequent to conveying the 200 acres to Robertson, Gale conveyed to plaintiff Wright the remaining portion of said section by the acre, the same being 485 acres, giving the field notes of the courses and distances.

No action has been taken by the Commissioner of the General Land Office to ascertain the existence and extent of any excess in section 110, but it appears from the evidence in the case that there exists an excess in this section of about forty-five acres.

This court has determined that it should refuse the writ of error, for the reason that the result reached by the Court of Civil Appeals is substantially correct, but in view of the importance of the question involved in this controversy, and the suggestion of learned counsel for plaintiff in error of the likelihood of similar questions arising in those sections of the State where lies a large quantity of the public school land, and for the reason that the legislative Act authorizing, under the direction of the Land Commissioner, the resurvey of sections already surveyed for the purpose of determining whether an excess of land exists and to what extent and authorizing by implication the segregation of any such excess and its sale, is indefinite and difficult of construction, we deem it proper that this court should, as far as possible, construe the statute referred to and suggest a remedy for those involved in controversies arising out of such excess claims. The case at bar necessarily raises that question and the discussion will not be concerning extraneous matter.

That we may be clearly understood, we quote so much of the legislative Act as relates to the question involved, including the preamble, the Act being of date March 22, 1889, and carried forward in the Revised Statutes as articles 4274, 4275 and 4276:

"An Act to provide for the ascertainment, distribution and sale of the excesses in surveys of land made for the school fund and to validate surveys of land as herein provided."

"Section 1. Be it enacted by the Legislature of the State of Texas: That all surveys and blocks of surveys heretofore made by virtue of valid alternate scrip be and the same are hereby declared to segregate from the mass of the public domain all the land embraced in said surveys, or blocks of surveys, as evidenced by the corners and lines of same, or by calls for natural or artificial objects, or the calls for

the corners and boundaries of other surveys or by the maps and other records in the General Land Office."

"Sec. 2.  That all excess in said surveys or blocks of surveys are hereby donated and declared to belong to the public free school fund of the State; and it shall be the duty of the Commissioner of the General Land Office to ascertain, by any and all means practicable, the existence and extent of such excesses, and to provide for and direct such surveys, or corrected surveys, as may be necessary for this purpose:  *Provided,* that where such surveys were made in blocks of two or more surveys, said respective surveys shall remain on the ground consecutively as placed therein, as shown by the maps, sketches and field notes originally returned to the General Land Office:  *Provided,* that the person who has already purchased, or who may hereafter purchase from the State, the particular section to which surplus shall by such resurvey be made contiguous, shall have the prior right for the period of six months after such resurvey shall have been made, in which to purchase such excess on the same terms on which such purchaser has already bought or may buy."

"Sec. 3.  That all such surveys which under the direction of the Commissioner of the General Land Office have been or may be hereafter corrected, so that all excess in the original surveys shall be placed in the surveys belonging to the public free schools, are hereby validated and the action of the Commissioner is hereby ratified; and he is directed and authorized to issue patents to the owners thereof, and to sell such surveys belonging to the public free schools, securing to the State the benefit of such excesses."

This court in the case of Willoughby v. Long, 96 Texas, 196, has partially construed the foregoing sections in regard to the purpose of the Act and the authority of the Land Commissioner to ascertain the existence and extent of such excesses, and it is needless for us to reiterate the views there expressed in this regard.  But the court did not consider and fully determine the authority of the Commissioner, after having ascertained the existence of an excess in any particular section, to segregate such excess from the body of the section in which it may be found.  The authority to segregate the excess, when ascertained, from the other portion of the section is not provided for in the Act, but arises by implication.  There being no positive or definite direction in the Act how this right of separation may be exercised by the commissioner, when the necessity arises, the court is called upon to construe the Act and determine how such authority may be exercised.  In the absence of any provision directing how to proceed in making the segregation of the excess found to exist we hold the commissioner, in the exercise of the authority confided in him by the Act, must be governed by those rules of justice and equity that control and govern the acts of individuals in dealing with one another in ordinary transactions, as recognized and promulgated by our courts of equity.  Because the State is interested in a matter and the public free school fund involved is no good reason why common sense, justice and equity should be discarded in construing the meaning and purpose of a legislative Act.

The case referred to (Willoughby v. Long, supra), and quoted from

by the Court of Civil Appeals was one in which the plaintiff sued to recover 320 acres of land, alleged to be the excess of a section thought to contain originally 640 acres, but which was shown by a resurvey to contain 960 acres. While the section had been resurveyed as a whole there had been no lopping off of the excess by the commissioner.

By this it will be seen that the question of in what manner the commissioner may exercise his right to segregate the excess found to exist in any section of land belonging to the free school fund was not one calling for determination by the decision of the court, and whatever was said in relation to such authority in that opinion was not essential to the proper disposition of the question involved and was dicta to that extent. It is quite clear to our minds that it was not designed in that opinion to construe the authority of the commissioner to arbitrarily or otherwise segregate such excess as to lands already sold, or that might be sold after the Act took effect. This clearly appears from the following language in that opinion: "That it (the Act) contemplated a segregation of the excess in such survey not patented and that such excess should be sold is also evident. But the method by which the segregation is to be accomplished is not provided, unless it is to be implied that the commissioner was empowered to determine, in his own way, what part should be considered as the excess. That as to the surveys which were unsold he might have been so authorized, and that his power would continue as to lands sold after the Act took effect we see no good reason to doubt." . . . Whether by the Act, which we have quoted in part, the Legislature has attempted to empower the commissioner of the General Land Office to do this as to lands sold at the time the statute took effect, we need not determine. Nor is it necessary that we should construe the statute with respect to other questions. In this case the commissioner has neither set apart nor attempted to set apart the excess in the survey, and it is quite apparent that the defendant in error had no right to treat the land in controversy as such excess."

If in that opinion there was no construction given the Act as to the authority of the commisisoner and the manner of his exercising such authority, as called for by the issues in that controversy, then we feel no restraint in construing the language of the Act, even though such construction might be apparently inconsistent with some language used in that opinion extraneously.

We can not subscribe to the doctrine as deducible from the Act quoted above, that the Commissioner of the General Land Office is clothed with the arbitrary or discretionary authority, after having received and approved an application made in good faith to purchase a section of land, previously surveyed by authority of law, after having resurveyed such section and ascertained that an excess exists, to segregate such excess from the body of the section and locate it in any portion of the section, without regard to improvements made by the purchaser of the section, his heirs or assigns, and without any reference to the quality of the land segregated as compared with the other portions of the section, and without the restraining limitation of any equitable rule governing the subject of partition and distribution of lands. It is evident to our minds that the Legislature

never contemplated conferring such power on the commissioner, under such circumstances. The moving purpose of the Act seems to have been to secure to the free school fund the benefit of any excess of land that might be found to exist in any survey of the public lands previously surveyed, and not to discommode, injure or in any manner impair the right of any purchaser of any of these public lands. This is indicated from the fact that the Act gives the original purchaser the preference right to purchase any such excess upon the same terms for which the survey was originally purchased, and to have six months in which to make the purchase after the commissioner has ascertained the existence of such excess.

The Act contemplates that the commissioner after having made the resurvey, or after having determined in any manner satisfactory to himself, the existence and extent of an excess, may sell the same to the purchaser of the section or survey affected thereby without segregating the excess from the body of the section or survey. This right extends likewise to the vendee of the original purchaser.

Should the commissioner after having ascertained the existence and extent of any such surplus desire to segregate the excess from the body of the section or survey he would be required as implied from the context of the Act to begin the resurvey at the beginning corner of the original survey and to leave the section or survey in a body and as near a square as may be practicable, and after giving the purchaser his quantum of acreage to lop off the excess. Where the segregation of the excess can not be made in conformity with the rule laid down as above on account of the peculiar or irregular shape of the survey containing the excess, the State may resort to a partition of the excess section or survey in such manner and under the same rules of equity as joint individual owners of land, the right of segregation given the Commissioner as the representative of the State being not an exclusive remedy.

If the objection is made to the method of segregation suggested that in some instances the excess thus lopped off might take the best land or the improvements of the purchaser, we answer that this seeming inequity is fully equalized by the provision of the Act giving the purchaser the right to purchase such excess upon the same terms as the original purchase was made. Then again it might be answered that the purchase was made after the legislative Act took effect and the purchaser is chargeable with notice of the law, and should perhaps take the precaution to ascertain, before making the application to purchase, whether the survey does or not contain an excess of acreage.

We do not think this court is called upon to discuss the law relating to the rights of the vendee to recover of his warrantor the purchase price of the land conveyed, or a portion thereof, where the title has failed, for the reason such question is not presented by the facts of this case.

Without affirming or disaffirming the doctrine that before a vendee can recover from his vendor for a failure of title, he may show an eviction, we think in the case at bar this question is not presented. This was a suit to recover for a shortage of acreage.

By the evident purpose of the Act under discussion and the facts

of this case the plaintiff in error is proscribed to a preliminary remedy before proceeding to recover of his vendor's warranty the purchase price of the shortage of acreage created by the existence of an excess in the section of which his land is a part. The Legislature has by its sovereign authority made the excess of all nonpatented surveys of alternate sections in this State a part of the public school fund and has provided for the sale of such excess by the Commissioner of the General Land Office, giving the preference right to purchase to the purchaser of the original survey in which the excess exists and upon the same terms of the original purchase.

. The plaintiff having purchased all of the section affected by the excess except the 200 acres previously sold by defendant, and under the construction given the Act as it controls the location of the excess and as applied to the facts of the present case, gets the entire excess within the limits of his purchase and has the same reduced to possession. He can call upon his vendor to make the proper application to the Commissioner of the General Land Office to purchase such excess as contemplated and provided for in the Act, which purchase will inure to his benefit, or at his election he may make the application himself to purchase such excess, as the owner of the survey containing the excess, and having done so in a proper manner and upon a proper showing the commissioner would be compelled to make the sale of such excess to him. After having made the purchase he would be authorized to recover of his warrantor such sum of money as he was required to expend in perfecting his title to the excess, not to exceed the amount paid his vendor for the shortage with legal interest. This right, we think, is accorded either the warrantor or his vendee, and that it is not necessary to await the action of the Commisioner of the General Land Office to make an ascertainment of the excess, as good public policy should encourage the early and definite settlement of all land titles in this State.

If when called upon to ascertain the extent of the excess he fails or refuses to make the ascertainment within a reasonable time, then either the warrantor or his vendee is authorized to make application to the commissioner for the purchase of such excess upon the same terms under which the section or survey was originally sold, and thereby acquire the State's title to the same.

It occurs to us the remedy here indicated should be sufficient to protect the rights of all parties interested in any excess lands created by said Act.

Filed October 25, 1911.

### ON MOTION FOR REHEARING.

It is suggested by counsel for plaintiff in error upon motion for rehearing that some inconvenience and injustice might arise in the segregation of any excess of land found to exist in any particular survey or section by establishing the rule that in making such segregation it should be done by commencing at the beginning corner of such original survey or section and leave the survey or section in a body and as near a square as may be practicable and after giving

the purchaser his quantum of acreage to lop off the excess; that by following such rule of lopping off the excess, it is possible to leave the excess in such shape as to be of little or no value where the lines of the survey or section are of greater length than 1900 varas. We do not think the method of segregation suggested in our opinion is susceptible of such construction, as a reasonable interpretation of our meaning would require the commissioner to commence at the beginning corner of such original survey or section and run the line the full length of the survey or section as made and marked upon the ground and leave the excess as well as the quantum of acreage sold originally in a body and as near a square form as practicable. That no misunderstanding may arise to our meaning in laying down this rule in our original opinion, we amend that rule there laid down for segregating the excess of land found to exist in any survey or section when it becomes necessary to make such segregation by adding thereto that the lines shall be run coextensive with the survey or section as made on the ground and the excess as well as the quantum of acreage sold the original purchaser shall be left in a body and as near a square form as practicable.

With this modification of our original opinion the motion for rehearing is overruled.

Opinion filed January 31, 1912.