## THOMAS et al. v. CLINE.

### No. 1966.

Court of Civil Appeals of Texas. Eastland.

Jan. 12, 1940.

Thomas & Thomas, of Big Spring, for plaintiffs in error.

Jno. B. Littler and W. M. Taylor, both of Big Spring, for defendant in error.

GRISSOM, Justice.

Clyde E. Thomas, R. V. Fryar and Clarence Fryar sued B. R. Cline for damages for trespass and sought an injunction restraining Cline from interfering with plaintiffs' possession of a tract of land. Defendant's answer consisted, among other things, of a general denial. Defendant further alleged that he was the owner of all of section 46, Block 33, Township 2 N, Howard County, Texas, except two tracts out of said section, to-wit, a tract of 200 acres patented to J. F. Thixton December 17, 1919, and a tract of 210.8 acres patented to Thixton April 6, 1936; that the defendant was the owner of the third tract of land out of said section, containing 246.7 acres

to which defendant obtained a patent in the name of Ben Hatch, March 11, 1937. Defendant alleged that in November, 1936, Thixton gave a deed of trust to the State National Bank of Big Spring on two tracts of land out of section 46 described therein as the "N ½ of NE ¼, the N ¾ of NW ¼ and 200 acres off of the south side of W ½, same aggregating 400 acres of land." That said Thomas purchased the 400 acres of land out of said section 46 described in said deed of trust; that a resurvey of section 46 disclosed that it contained an excess, leaving a balance of 246.7 acres to defendant after deducting the two tracts aggregating 410.8 acres formerly owned by Thixton and patented to Thixton and acquired by plaintiff Thomas through a sale under said deed of trust. That defendant purchased from the State the 6.7 excess acreage and had a patent issued, in the name of Ben Hatch, to the 246.7 acres.

The record shows that section 46 was, in January 1903, classified and appraised by the Commissioner of the General Land Office as dry grazing land, priced at $1 per acre, listed as 640 acres of land, and sold to R. C. Coffee May 10, 1899. The certificate of proof of occupancy by the Commissioner of the General Land Office showed that G. L. Brown, in March, 1903, filed proof of three years' residence and occupancy on said section. On February 24, 1937, Ben Hatch and wife, being the owners thereof, executed a general warranty deed to defendant to all of the SE ¼ and the S ½ of the NE ¼ of section 46. The deed contained the following recital: "comprising 240 acres of land."

In September, 1916, W. J. Hardy conveyed to J. F. Thixton 40 acres off the south side of the NW ¼ of section 46 and the SW ¼ of section 46. Said deed contained the recital "both of said tracts of land herein conveyed comprising the south 200 acres off the W ½ of section 46."

On December 17, 1919, Thixton procured a patent from the State to the SW ¼ and the S ¼ of the NW ¼ of section 46, stated therein to be 200 acres. On December 29, 1920, B. Smith and wife conveyed to Thixton the N ½ of the NE ¼ and N ¾ of the NW ¼ of section 46. The deed contained the recital "containing 200 acres of land."

In April, 1936, Thixton obtained a patent to 210.8 acres of land described as the N ½ of the NE ¼ and the N ¾ of the NW ¼ of section 46.

In November, 1936, Thixton and wife executed a deed of trust conveying to T. S. Currie, trustee for the State National Bank of Big Spring, the N ½ of the NE ¼ and the N ¾ of the NW ¼ of section No. 46 "also 200 acres off of the south side of the W ½ of Section No. 46."

On February 1, 1938, plaintiff Thomas, having purchased the land at a trustee's sale under said deed of trust, received a trustee's deed describing the land as "all of the N ½ of the NE ¼ and the N ¾ of the NW ¼ of Section No. 46" and "also 200 acres off the South side of the W ½ of Section No. 46."

In March, 1937, defendant Cline caused a patent to issue to "Ben Hatch, assignee, his heirs and assigns" to 246.7 acres of land described as being "in Howard County known as the SE ¼ and S ½ of NE ¼ of Survey 46 * * * bought and fully paid for on the application of R. C. Coffee filed in the General Land Office May 10, 1899 under the laws regulating the sale of public free school lands."

Until about the time Thixton obtained a patent to the 210.8 acre tract apparently neither Thixton nor Cline knew there was excess acreage in section 46 and dealt with the land as if Thixton owned 400 acres and Cline owned 240 acres of said section. On April 12, 1938, Cline, having had his land surveyed and patented, moved the fence on the north and west of his tract of land (which fence had been at the old location since about 1916) a short distance north and west into the tract of land which was being cultivated by the Fryars as tenants of Thomas. The space between the old and the new fence is the land in controversy in this suit. It is alleged by plaintiffs to contain 6.7 acres, but, according to the testimony of defendant's surveyor, actually contains slightly in excess of 3 acres.

At the close of the evidence the court instructed a verdict for defendant on plaintiffs' cause of action, and for defendant on its cross-action seeking removal of cloud on his title. Judgment was accordingly entered and plaintiffs have appealed.

It appears to be plaintiffs' contention that he, and those under whom he claims, having been in possession of the disputed strip since 1916, and Cline having moved the fence so as to include land being cultivated by plaintiffs, without their consent, and the new fence being erected partly in the nighttime, as a matter of law, proof of such facts show Cline guilty of trespass and plaintiffs

entitled to damages. Plaintiffs further contend that the old fence had been treated as a boundary fence since about 1916, and Cline occupied his tract of land as a tenant prior to the time he purchased it, and purchased it knowing the location of said fence; therefore, Cline is estopped to claim that his boundary line is at another place. Plaintiffs further contend, as we understand it, that even if said strip of land between the old and new fence was in fact owned by Cline that, under the aforesaid facts, Cline nevertheless is guilty of trespass. Plaintiffs contend further that they and their predecessors in title, having claimed said strip of land, cultivated, used and enjoyed it since 1916, acquired title thereto by limitation.

The evidence shows that the new fence built by Cline was built along the line fixed by the field notes in the patents to Thixton, and the patent to Hatch and assigns obtained by Cline; that the patents to said two tracts of land acquired by Thixton conveyed to Thixton his proportionate share of the 17.5 acres of excess in the section; that Cline in obtaining his patent to 246.7 acres of land purchased from the State the 6.7 acres excess which remained in the section. That the new fence erected by Cline is within the boundaries of the land described in the patent to Cline and outside the boundaries of the land described in the patents to Thixton.

■ We think the introduction of a patent from the State to defendant's assignor Hatch, to the land in controversy, is a complete answer to plaintiffs' contention that plaintiffs established their case by proof merely that plaintiffs were in possession of the disputed strip and were ousted by the defendant whom plaintiffs assume was a mere trespasser. The introduction by defendant of a recent patent to said land prevented plaintiffs' said evidence from having such supposed effect. The introduction by defendant of a patent to the land in controversy made a prima facie case entitling defendant to the ownership and possession of the land in dispute. Elliott v. Nelson, 113 Tex. 62, 251 S.W. 501; Burkhead v. Bush, Tex.Civ.App., 75 S.W. 67; Johnson v. Eldridge, 49 Tex. 507. Proof of issuance of said patent by the state further constituted prima facie evidence that until its issuance title to the disputed strip was in the State. Walters v. Witcher, Tex. Civ.App., 44 S.W.2d 511; Stevens v. Geiser, 71 Tex. 140, 8 S.W. 610; Koch v. Poerner, Tex.Civ.App., 55 S.W. 386.

■ The acreage in excess of 640 acres in said section 46, until purchased from the State, was never owned by plaintiff Thomas, nor defendant Cline, nor their predecessors in title, but it was owned by the State and held for the benefit of the public free schools of Texas. Until the disputed strip became the property of Cline, by purchase from the State, plaintiff Thomas could not acquire title thereto by limitation, and limitation did not begin to run until the conveyance by the State to Hatch for the benefit of Cline.

In Austin v. Dungan, 46 Tex. 236, 246, the court said: "It is unnecessary for us to say that there is nothing in the decisions of this court to give countenance to the supposition that a grant of the public domain will be presumed from ten years' possession. Nor is there anything in the statutes, or in the practice and usage of the State, in the granting of land, to authorize the inference that the State must eject trespassers, or recover possession of the public land from occupants, before it can make a valid grant or conveyance of it to other parties. * * * It follows, as a necessary consequence, that a purchaser from the State will not be barred; for it would be tantamount to a denial of the title of the State or its right to convey, to say that the bar, though not directly applicable to the State, would take effect immediately on the title vesting in the purchaser or grantee from it."

In Smith v. Power, 23 Tex. 29, 30, 35, the Supreme Court said: "On general principles, and by the express provision of the statute * * * limitation does not run against the state. And it is well settled, in cases like the present, that the statute does not commence to run against a party claiming under the government, until the right accrues to the claimant."

To the same effect see Truehart v. Babcock, 49 Tex. 249, 259, and Brown v. Sneed, 77 Tex. 471, 14 S.W. 248, 251.

■ Title to said land belonging to the State was not acquired by plaintiff Thomas by adverse possession, even if Cline recognized the old fence line as the boundary between the tracts. Weatherly v. Jackson, 123 Tex. 213, 71 S.W.2d 259.

■ We think the issuance to and acceptance of the patents by Thixton, in whose shoes plaintiff Thomas must neces-

sarily stand, to the 200 acre tract and to the 210.8 acre tract (containing 10.8 acres of the excess in section 46, being Thixton's proportionate share of the total excess in the section) is conclusive as to the extent of the claim of Thixton, binding on his vendee, Thomas, "both as to the limitation of acreage as described in the patent[s] and as to any claim to excess in the survey." Anderson v. Robison, 111 Tex. 402, 238 S.W. 883. Also see Miller v. Yates, 122 Tex. 435, 441, 61 S.W.2d 767, 769; Id., Tex.Civ.App., 15 S.W.2d 730, 734; Turner v. Smith, 122 Tex. 338, 61 S.W.2d 792; Anderson v. Robison, 111 Tex. 402, 229 S.W. 459; Doty v. Barnard, 92 Tex. 104, 47 S.W. 712; 34 Tex.Jur. 92 et seq.; Wright v. Gale, 104 Tex. 450, 140 S.W. 91, 94; Id., 104 Tex. 450, 143 S.W. 141; Garcia v. State, Tex.Civ.App., 274 S.W. 319, 321; Sullivan v. State, 41 Tex.Civ.App. 89, 95 S.W. 645, 648, writ dismissed; Hamilton v. State, Tex.Civ.App., 152 S.W. 1117, 1121; Montgomery County v. Angier, 32 Tex.Civ.App. 451, 74 S.W. 957, 959, writ refused.

We are of the opinion reversible error is not shown and the judgment should be affirmed.

Affirmed.