HARRIS COUNTY IRRIGATION COMPANY ET AL. V. JACOB HORNBERGER ET AL.

Decided March 28, 1906.

**1.—Boundary—Conflicting Testimony.**

Where the evidence as to the true location of a boundary line is conflicting, the judgment of the trial court will not be disturbed, even though the Appellate Court, upon consideration of the evidence, might reach a different conclusion.

**2.—Surveyor—Compensation.**

Article 5264, Revised Statutes, makes no provision for compensation for services rendered by a surveyor appointed by order of the court to survey the premises in controversy. The fact that his report and map are rejected on motion of one of the parties to the suit is no reason for depriving him of compensation. The amount of compensation rests in the sound discretion of the court.

Error from the District Court of Harris. Tried below before Hon. Norman G. Kittrell.

*John G. Tod,* for plaintiffs in error.—When the footsteps of the surveyor in making the original surveys or tracts of land in controversy in a boundary suit can be traced, they must be followed. Williams v. Winslow, 84 Texas, 377; Blassingame v. Davis, 68 Texas, 597; Fagan v. Stoner, 67 Texas, 287; Stafford v. King, 30 Texas, 273.

Calls for rivers and well defined streams, or other natural objects, are of the highest dignity, and prevail over all other calls. Bigham v. McDowell, 69 Texas, 102; Galveston County v. Tankersley, 39 Texas, 659; Stafford v. King, 30 Texas, 271; Booth v. Strippleman, 26 Texas, 441.

Calls for marked lines of an older survey which can be identified with certainty, will control a call for course and distance. Booth v. Upshur, 26 Texas, 70; Stafford v. King, 30 Texas, 269; Anderson v. Stamps, 19 Texas, 466.

The rule, in according higher dignity in boundary suits to some calls than to others, is not absolute, and a call of higher dignity will be made to give way to a lower one when, on consideration of all the evidence in the case, it is clearly shown that the construction based upon the higher call is incorrect. Linney v. Wood, 66 Texas, 29; Williams v. Beckham, 6 Texas Civ. App., 744; Jones v. Burgett, 46 Texas, 292; Booth v. Strippleman, 26 Texas, 441; Hubert v. Bartlett, 9 Texas, 104.

When a surveyor has been appointed by the court under the provisions of article 5264, Revised Statutes, to survey lands in controversy in a boundary suit, and makes a survey and report not in accordance with law and the order of the court appointing him, he is not entitled to compensation at expense of the party cast in the suit.

In any case where the surveyor has been appointed by the court under the provision of article 5264, Revised Statutes of Texas, and the court is authorized to fix his compensation and tax it against the party cast in the suit, the court can not allow an amount to exceed the ordinary and reasonable cost of surveying in the community in which the services are rendered.

Surveyors, when attending court as witnesses under subpoena, are entitled only to the per diem and mileage fixed by statute, and it is error for the court to allow them any greater amount. Rev. Stats., arts. 2267, 2268.

*E. P. & Otis K. Hamblen* and *W. C. Oliver,* for defendants in error.— The court did not err in establishing the stone corner (being 77 varas west of the S T tree) as the common corner of the Singleton, Duncan and Jacobs Surveys. If there was any error, the appellants were benefited by it and the appellees the losers thereby.

The evidence of the surveyors relied on by the appellants to sustain their contention was conflicting and irreconcilable, no two of them agreeing as to the course and distance run by them in the first call of the Duncan survey.

If we take the stump of the S T tree, as claimed by appellees, to be the true corner between these surveys, and reverse the calls in the Duncan from that point, it will practically carry us to the mouth of Bear Bayou.

To adopt appellants' contention, we must not only disregard the calls for course and distance in the Duncan patent, but also locate the S T tree in a point or grove of pines instead of in the prairie, as called for in the Singleton.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by defendant in error Hornberger against his co-defendants in error, plaintiffs in error and other original defendants, in the ordinary form of trespass to try title to recover the Solomon Jacob's 640-acre survey. The question presented, however, is purely one of boundary.

Defendants below who are plaintiffs in error disclaimed title to the land sued for unless it should be in conflict with lands claimed by them in the Peter J. Duncan survey. Those defendants below who are joined here with Hornberger as defendants in error disclaimed title to the land sued for except such part thereof as might be in the Spyars Singleton survey. Therefore, the question presented is whether there is a conflict either between the Jacobs, which it is admitted to belong to Hornberger, and the Peter J. Duncan or the Spyars Singleton surveys.

The case was tried without a jury and the court rendered judgment in favor of Hornberger against all the defendants except two, as to whom the suit was dismissed, for the survey sued for declaring that the southeast corner of the Spyars Singleton survey and the re-entrant southwest corner of the Peter J. Duncan survey to be located at a point N. 88½ degrees E. 2240 varas from Carpenter's Bayou, designated and marked by a dressed stone on which is inscribed "South corner, Jacobs, Mar., 1895, W. A. Polk, Surveyor." It is then "ordered and decreed that said stone marks the ancient location of said southeast corner of the Spyars Singleton and the interior of re-entrant southwest corner of the Peter J. Duncan survey and also the beginning point of the Solomon Jacobs and Blunt N. Sessums surveys." From this judgment the writ of error is prosecuted, as well as from an order of the court allowing J. W. Maxey $141 compensation for surveying the land in controversy, which are taxed as costs against plaintiffs in error.

It is unnecessary to copy the assignments of error in this opinion. It is enough to say that the assignments relating to the judgment affecting the land in controversy, question the sufficiency of the evidence to warrant the court in establishing the southeast corner of the Spyars Singleton survey and the re-entrant southwest corner of the Peter J. Duncan survey at a point N. 88½ degrees E. 2240 varas distant from Carpenter's Bayou designated and marked by a dressed stone, etc.  .

The entire controversy depends upon the correct location of this corner, for it is common to the Spyar Singleton and the Peter J. Duncan surveys and the beginning corner of the Solomon Jacob's.

The field notes of the Solomon Jacobs survey call to begin at the southeast corner of the Spyar Singleton one-half league on Carpenter's Bayou at a pine tree 14 inches in diameter marked S. T. on north boundary line of the Peter J. Duncan survey; thence N. 2780 varas with Singleton's line to a stake and mound in the prairie for second corner, the same being also the southwest corner of a survey made for Blunt N. Sessums; thence east 2595 varas with Sessums south boundary line to southeast corner, a stake and mound in prairie for third corner; thence south 43 degrees west 3875 varas to beginning.

The southeast corner of the Singleton and the northwest reentrant corner of the Duncan each call for a pine tree marked S. T. as their common corner. In 1855 the Singleton was resurveyed on account of a conflict with the Hirom survey on its west line. In each of the field notes it calls to begin for its southeast corner at a pine in the prairie marked S. T. being also a corner of the Peter J. Duncan survey. Peter J. Duncan and J. W. Singleton were chain carriers on this survey. Spyar Singleton, a nephew of the patentee and son of J. W. Singleton, who was a chain carrier when the Singleton was located in 1838 and in 1852 when it was resurveyed, testified that his father pointed out to him the pine tree marked S. T. which stood in the Amos McGee tract, formerly the Passmore 50 acres, and told him that it was the Duncan corner. The stump of said tree is still standing there. All of the deeds calling for the south portion of the Singleton survey, call for the pine tree marked S. T. at its southeast corner.

Robert Blalock testified that he had often heard that the pine tree marked S. T. standing in the Sherman place was the corner of the Singleton and Duncan surveys, and that as far as he knew it had always been recognized as that corner.

Johnson Seals testified that in 1879 Mr. Sherman, who then owned the Amos McGee 50 acres, pointed out to him the S. T. mark on said pine tree, and that the stump of the tree is still standing near Amos McGee's branding pen.

Charlie Thompson testified that when Passmore owned said 50 acres he plowed up the ground for him before it was enclosed and that Passmore told him not to plow up the tree as it was a corner tree; that the tree has been cut down but the stump is still there.

Sol Henderson testified that he worked for Amos McGee and that McGee wanted him to get a horse trough and not being able to find one he came back and told him that pine tree being burnt out would make a good one and that McGee told him to cut it down, that the tree was

marked S. T.; and that the old gentleman (J. P. McGee) was mad because he cut it down and said that it was a corner tree.

John Blalock testified that he saw the old pine tree marked S. T. with a mark on it and knew that it was called a corner tree of the Singleton and McGee surveys. That he came along soon after it was cut down and old man McGee seemed to be angry about it and said something about it being a corner tree of the Singleton survey. That he had seen the tree before it was cut down, it was dying from the top; a fire had been through there and had caused it to die; that it burned out one corner of the tree as well as he could recollect. That his recollection is that it did not burn out any of the letters and that it had been about ten or eleven years since he first saw those letters on the tree.

R. M. Blalock testified that he knew where Amos McGee lived on the Duncan survey and that witness had lived on the survey and knew where there was a pine tree a little west of McGee's house that was marked S. T. and that he heard different people say that the tree stood there for a corner between the Duncan and Singleton surveys. That when Stimson was surveying some land out there about 1894, he (witness) found the tree marked S. T. and called attention to it.

J. W. Matthews testified that he saw the pine tree with the S. T. mark on it about 1893 near Amos McGee's house.

Amos McGee testified that the old pine tree with the S. T. mark on it stood near the corner of his pen; that the mark was old and that he had never heard of the tree being marked until it was cut down to make him a trough, and that his father raised the mischief with him for cutting it down, stating that it was an old corner tree.

. R. J. Thacker testified that he went out on the land in 1883 to make a partition among some of Singleton's heirs and in order to run off the Singleton tract they started at the S. T. tree at the southeast corner; that subsequently he was on the land with Gillespie and he went to the same pine tree with him and was there the third time with Gillespie.

J. W. Gillespie, a surveyor (son of J. J. Gillespie, the old surveyor), testified that taking the stump claimed to be the S. T. tree as a basis, he ran south 88½ degrees west, crossing the bayou at 2241 varas and he found old marks on the line. The field notes of the Singleton called for crossing the bayou at a point where it runs on this course 240 varas from the S. T. tree. Donaldson, also a surveyor, corroborated this evidence as to the distance this stump was from the bayou on that course, and also as to finding of old marked trees.

Gillespie testified that by commencing at the S. T. stump and reversing the calls of the Duncan he struck a little above the mouth of Bear Bayou with an excess of 53 varas in last call.

W. A. Polk, a surveyor, testified substantially to the same effect.

Maxey, another surveyor, testified that by commencing at the stone 77 varas west of the S. T. tree and reversing the calls that would not quite carry you to the mouth of Bear Bayou, but would fall slightly below the mouth.

Packard testified if you commence at the water's edge and follow the course the distance called for in the Duncan field notes it will bring you to the S. T. stump.

The testimony of the surveyors recited shows that by taking the stump

of the S. T. pine tree referred to by the other witnesses to be the corner of the three surveys and reverse the calls in the Duncan from that point and running course and distance on the reverse calls by the field notes, the mouth of Bear Bayou will practically be reached, which is the beginning point of the Peter J. Duncan survey.

We are not able to say that this evidence does not tend to show that the S. T. pine tree referred to is not the corner of the Duncan, Singleton and Jacobs surveys as originally established and called for in their field notes. Taking alone the testimony recited, we believe that it strongly tends to show that it is such corner.

It is unnecessary for us to recite the testimony relied upon by plaintiffs in error to establish their theory that the judgment of the trial court places the southwest corner of the Singleton and northwest corner of the Duncan surveys 195.6 varas south of the true common corner and locates the common corner of the Duncan, Singleton and Jacobs surveys 195.6 varas south and 256 varas east of the true common corner. While there is much evidence strongly tending to establish this theory, yet, as the trial judge found against it upon evidence which we are not able to say was insufficient to warrant such finding, we do not believe that we have a right to disturb his judgment even though, if left to us to decide, we might reach the conclusion that the contention of plaintiffs in error is correct.

The "dressed stone" which is designated by the judgment as marking and indicating the corner of the three surveys, was placed at a point established by J. J. Gillespie, the old county surveyor, by Stimson which he accepted and took as the common corner of the three surveys. It is 77 varas west of the S. T. tree. The reason given by him, Stimson, for not accepting the S. T. tree for the corner instead of the corner established by Gillespie, was that he thought Mr. Gillespie was more familiar with the boundaries than he was and that he did not want to cross his work. By taking the stone set by Stimson instead of the S. T. pine tree for the corner it places the Duncan line 77 varas west of where it would be if the S. T. tree was taken for the corner, thereby giving that survey that much more land. Therefore, plaintiffs in error can not complain of the court's establishing the corner as designated in its judgment instead of fixing it at the S. T. pine tree. Defendants in error are the only parties who are injured by establishing the corner at the point fixed by the court instead of at the pine tree and they do not complain of it.

John W. Maxey, a surveyor, was, under article 5264, Revised Statutes, appointed by an order of the court to survey the premises in controversy and made the survey pursuant to such order. The statute makes no provision for compensation of services rendered by a surveyor in pursuance of such an order. Therefore, it must be left to the sound discretion of the trial judge to fix such compensation for services of a surveyor in obedience to such an order. The trial court, on the motion to retax the costs, held that "while Mr. Maxey's services as a civil engineer may be worth, as he states, $50 a day, yet when he undertakes to perform the duties of a land surveyor in the ordinary way he can only claim such compensation as a surveyor of his skill or approximate skill could fairly earn under like conditions. The trial court then held under the cir-

cumstances $20 a day for his services as a surveyor and his charges for help and teams would be a fair compensation, and allowed him that sum per day for the five days he was employed in making said survey, maps, diagrams and photographs thereof. That his report and map of the survey was rejected on motion of plaintiffs in error furnishes no reason for depriving him of the compensation allowed by the court. For they were used by all parties upon the trial of the cause. This court is not able to say that the court abused its discretion in so fixing the amount of Mr. Maxey's compensation.

The judgment of the District Court is in all things affirmed.

*Affirmed.*