JONES et al. v. BURKITT et al.

(Court of Civil Appeals of Texas. Galveston.. June 27, 1912. Rehearing Denied Oct. 10, 1912.)

1. BOUNDARIES (§ 37*) — EVIDENCE — SUFFICIENCY.

Evidence *held* to support a verdict locating a boundary line at the distance called for in field notes from a corner.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 184–194; Dec. Dig. § 37.*]

2. BOUNDARIES (§ 36*)—EVIDENCE—ADMISSIBILITY.

Where the issue was the location of the boundary line of a survey, the field notes in junior surveys containing nothing in their calls to fix the location of the disputed line were properly excluded.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 160–162, 164, 166–176; Dec. Dig. § 36.*]

3. JUDGMENT (§ 712*)—CONCLUSIVENESS.

One not a party to a suit involving title to land is not bound by the judgment, except as to his subsequent acquisition of title to any part of the land.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1233; Dec. Dig. § 712.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**4. PLEADING (§ 236*) — AMENDMENTS — GROUNDS.**

Where a party announced ready for trial with the understanding that he could file a plea of limitations after the trial began if he found it necessary to do so to meet a pleading, and the court accepted the conditional announcement, and no objection thereto was made by counsel of the adverse party, the refusal to permit the party to file a plea of limitation to a pleading of the adverse party during the trial was erroneous.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 601; Dec. Dig. § 236.*]

Appeal from District Court, Harris County; E. R. Campbell, Special Judge.

Action by G. W. Burkitt against W. E. Jones and others. From a judgment for plaintiff and certain of the defendants, defendant W. E. Jones and the executors of M. T. Jones, deceased, appeal. Affirmed in part; reversed and remanded in part.

Daniel E. Garrett and W. O. Huggins, both of Houston, for appellants. O. T. Holt, L. M. Williamson, J. W. Lockett, J. C. Hutcheson, Jr., and A. R. & W. P. Hamblen, all of Houston, for appellees.

PLEASANTS, C. J. This suit was brought by the appellee Burkitt against the appellant W. E. Jones and the executors of the estate of M. T. Jones, deceased, and a number of other defendants. Plaintiff's petition in addition to formal allegations of trespass to try title to the north half of section No. 2 of Washington county railroad surveys in Harris county alleges that the controversy is really one of boundary, the line in dispute being the north line of said survey No. 2, which is identical with the south line of the Thomas Earle league; that defendants W. E. Jones and the executors of the estate of M. T. Jones, deceased, own the south portion of the Earle league and the other defendants own the S. ½ of said survey No. 2, and also survey No. 3 of said Washington county surveys, lying immediately south of said survey No. 2. The prayer of the petition is that the south line of the Thomas Earle league be established 335 varas north of the line claimed by the defendants, W. E. Jones and the executors of the estate of M. T. Jones, and plaintiff recover of said defendants all of the land held by them on said survey No. 2 as so fixed and established, and, in alternative, judgment is asked against the other defendants fixing the south line of the N. ½ of said survey No. 2 and the south line of said survey 335 varas south of the line as claimed by said defendants. The appellants answered by general demurrer and plea of not guilty and pleas of limitation of five and ten years. They also pleaded a judgment of the district court of Harris county as res adjudicata upon the issue of the location of the north boundary line of said survey No. 2.

It is unnecessary to name the other numerous defendants who are appellees herein, or to notice the various pleadings filed by them, except the appellee F. C. Hubbell, who is alleged in plaintiffs' petition to be the owner of survey No. 3 lying south of said survey No. 2, and who was made a party defendant in order that the alternative prayer of the petition might be considered by the court in event plaintiff failed to establish the north line of survey No. 2 as claimed by him. This defendant, in addition to pleas of not guilty and other defensive pleas interposed to plaintiff's suit, alleged that he owned survey No. 1 of said Washington county surveys, which lies immediately east of said survey No. 2 and south of the Thomas Earle league, the north line of said survey No. 1 being identical with the south line of the Thomas Earle league, and prayed that said line be fixed and established at a point 335 varas north of the line claimed by appellants. All of the numerous defendants impleaded their warrantors immediate and remote, and the number of defendants and the number of pleadings filed make the record both voluminous and confusing, but, for the purpose of understanding and deciding the questions presented by this appeal, the foregoing is a sufficient statement of the issues presented in the court below. The trial in the court below with a jury resulted in a verdict fixing the location of the south line of the Thomas Earle league as claimed by plaintiff and defendant Hubbell. The court declined to submit the issue of limitation pleaded by appellants, and held that, as to one-half of the strip of land in controversy between plaintiff and defendants, plaintiff was estopped by the former judgment of the district court of Harris county pleaded by appellants. Judgment was rendered in accordance with the verdict of the jury and holdings of the court above stated. This appeal is prosecuted from said judgment by the defendants W. E. Jones and the executors of the estate of M. T. Jones, deceased.

The evidence shows that the Thomas Earle league was located in 1824. Its field notes called to begin on the south side of Buffalo bayou at a pine tree from which an elm eight inches in diameter bears north 23 degrees west 23 varas; thence south, 5547 varas, to post in prairie; thence east 5,000 varas, to stake in prairie; thence north, 4,500 varas, to Buffalo bayou; thence up the bayou to the beginning. The Washington county surveys Nos. 1 and 2 were located by J. J. Gillespie, deputy surveyor of Harris county, on July 11 and 12, 1860. The field notes of survey No. 1 are as follows: "Beginning on the south boundary line of the T. Earle league 2,500 vrs. west of the S. E. corner of the same at an ash stake for cor. from which Round Point bears S. 16 degrees E. Thence south 1,445 varas to a square pine stake for cor. Thence east 2500

varas to cor. on the west boundary line of the H. W. Raglin survey. Thence north 1445 varas to the S. E. cor. of the Earle league. Thence west 2500 varas along the south boundary of the Earle league to the place of beginning." Survey No. 2 is thus described by its original field notes: "Beginning at the northeast cor. of this survey the N. W. cor. of No. 1 in the south line of Thos. Earle league survey at an ash stake blazed on 4 sides for cor. from which Round Point bears S. 16 E. Thence south 1445 varas on the west boundary line of survey No. 1 to a square pine stake for cor. Thence west 2500 varas to cor. mound on the east boundary line of the James Seymore survey. Thence north 1445 varas to the S. W. cor. of the T. Earle league. Thence east 2500 varas along the south boundary of the T. Earle league to beginning cor."

It will be observed that the field notes of the Thomas Earle league do not call for any natural object except the bayou and a pine tree at the beginning corner of the survey from which an elm tree eight inches in diameter bears N. 23 W. 23 varas. No trees or other object is called for to mark the fourth corner on the bayou. It was shown, however, that as early as 1838, when the James Seymore survey adjoining the Earle on the west and the J. B. Woods adjoining it on the east were located, that there were marked trees at both corners of the Earle on the bayou. In the field notes of the Seymore the northwest or beginning corner of the Earle is called for, and is described as follows: "A pine tree 30 inches in diameter on the south bank of Buffalo bayou marked T E on the east and P on the west, from which an elm eight inches in diameter marked X bears N. 23 W. 23.6 varas." The field notes of the Woods survey call for the southwest corner of said survey on the east line of the Thomas Earle survey. "Thence north 2400 varas to stake on Buffalo bayou marked T E on south and N E on north, from which a pecan tree five inches in diameter marked A bears north 27½ degrees west and a cypress twenty inches in diameter bears south 86 degrees west 14 varas." The northeast corner of the Earle as described in the field notes of the Woods can now be found and indentified on the ground from the pecan bearing tree called for and this corner and the location of the east line of the Earle have been known and recognized for many years. The location of the west line of the Earle has also been known and recognized for a long time, and there is practically no dispute as to its location. There is also evidence sufficient to sustain the finding that the location of the pine tree called for as marking the northwest corner of the Earle was at the point on the bayou at which the west line of the Earle, as it has been known and recognized by appellants and all others interested in its location, strikes said bayou.

J. J. Gillespie testified that 25 years or more ago his father, who located the Washington county surveys, showed him a pine tree on Buffalo bayou which he said was the northeast corner of the Thomas Earle, and at which he said he began his surveying to locate the south line of the Earle when he located the Washington county surveys along said south line. According to this witness, the stump of this pine tree is at the point on the bayou where the west line of the Earle, as that line has been long known and recognized by all parties interested in its location, reaches the bayou. If the Thomas Earle league be located by commencing at this beginning corner and running the west line, the course and distance called for in the field notes of the survey, thence east the distance called for in said field notes, and thence north to the bayou the south line of said league will be located as claimed by appellees. If it be located by beginning at the established northeast corner and reversing the calls and running the east line south the distance called for in the field notes, thence west the distance called for, and thence north to the bayou, the south line will be located as claimed by appellants. This difference in the location of the south line is due to the fact that if the survey is run from the beginning corner, and the west line only given the distance called for in the field notes, and the south line run east from the southwest corner as thus located, the southeast corner will be found at a point 335 varas further north than the distance called for the east line of the league would fix said corner. In other words, there is a mistake of 335 varas in the call for distance either in the west or east line. The west line is 335 varas longer, or the east line is that much shorter than the call for distance in the field notes. There are no marks of any kind on the south line of the league, or at either its southwest or southeast corners, and the south line can only be fixed by course and distance from the known northwest or northeast corners of the league. If the south line is fixed as contended for by appellants, the league will have an excess in acreage of 350 acres. If located as appellees contend, its acreage will be approximately the amount called for in the patent.

[1] We think under these facts the jury were authorized to find that the south line of the league was located at the distance called for in the field notes from the northwest corner, which was the beginning corner of the survey, and the verdict so fixing it cannot be set aside on the ground that it is not supported by the evidence.

[2] We do not think the trial court erred in refusing to permit the appellant to introduce copies of the field notes of a number of surveys lying west and south of the Thomas Earle league. These surveys were all junior

to the Earle, and there was nothing in the calls in their field notes which tended to fix the location of the south line of the Earle league. That line is not called for in any of said field notes. The east line of said league is called for in some of these field notes, but, as the location of that line is not disputed, the calls for it in the excluded field notes shed no light upon any issue in this case. This is also true of the call for the southeast corner of the Earle in the field notes of the H. W. Raglin survey which adjoins the Earle on the east, the east line of the Earle being a part of the west boundary of the Raglin. The call in the Raglin field notes for the southeast corner of the Earle is only a passing call. No marks of any kind are mentioned, and there is nothing in the call to fix or identify such corner other than the distance called for in the field notes of the Earle for its east line, and it is apparent that the surveyor who located the Raglin was only controlled by this call for distance in making the passing call for the southeast corner of the Earle in surveying the west line of the Raglin.

None of the various assignments of error complaining of the ruling of the trial court sustaining objections of appellees to evidence offered by the appellants as to the location of the several surveys south of the Earle league can be sustained. All of these surveys were located after the Earle, and none of them call for the south line of the Earle, and the location of their lines does not tend to establish the true location of the Earle south line.

[3] There was no error in the ruling of the court on the plea of res adjudicata, based on the judgment of the district court of Harris county in the case of Ross v. Jones. Plaintiff Burkitt was not a party to that suit, and therefore is not estopped by said judgment, except as to the undivided one-half of the land involved in said suit, which he subsequently acquired by partition deed from the plaintiff in said suit.

[4] When this case was called for trial in the court below, counsel for appellants announced that because of the large number of parties and great number of papers filed as pleadings in the case, and because of the fact that the papers in the case had been out of the custody of the court and had been scattered among the various counsel in the case, they were not sure that they had seen and read all of the pleadings in the case, and that, therefore, they would announce ready and go to trial with the understanding that, if there was any pleading asking any relief against their clients to which an answer had not been filed and to which a plea of limitation could be interposed, they would be given an opportunity to file such plea. None of the counsel for the other parties made any objection to this announcement, and the court accepted it and the case proceeded to

trial. On the second or third day of the trial appellants' counsel discovered for the first time that in an amended answer filed by the defendant Hubbell 18 months before the trial he had sought to recover of the appellant a strip of land 335 varas in width along the north line of Washington county survey No. 1. He then by written motion asked the court to permit him to file a plea of limitation to this demand of the defendant Hubbell. This motion was refused by the court, to which appellants excepted and have brought up the question by proper bill of exceptions.

We think the trial court erred in this ruling. The court should have properly declined to have accepted the conditional announcement of ready for trial made by appellants' counsel and required him to announce unconditionally or made formal application for postponement; but, having accepted the conditional announcement and no objection thereto having been made by the counsel of defendant Hubbell, the appellants should have been allowed to file their plea of limitation when they discovered that it was necessary so to do to meet the pleadings of said defendant. It does not appear from the bill of exceptions that appellants' failure to sooner discover the pleading of the defendant Hubbell would have caused any more delay in the proceeding if they had been permitted to then file their plea of limitation than would have been caused if such discovery had been made shortly after the trial began. They announced ready for trial with the understanding and agreement on the part of the court and the attorneys for defendant Hubbell that they could file such plea after the trial began if they found it necessary to thus meet the pleadings of any of the defendants, and no sufficient reason is shown for denying them the benefit of this agreement.

We think the evidence raised the issue of limitation as to a portion of the land claimed by the appellees Burkitt and Hubbell, and the request of the appellants to have that issue submitted to the jury should have been granted.

We have not considered it necessary to discuss in detail the numerous assignments of error presented in appellants' brief. None of the assignments point out any error which requires a reversal of that portion of the judgment fixing the south boundary line of the Thomas Earle league, and we are of opinion that the judgment fixing said boundary line should be affirmed as to all of the appellees. The only errors which we think require a reversal relate to the rulings of the court upon the issue of limitation between appellants and the appellees Burkitt and Hubbell, and as to said appellees we think the judgment should be reversed, and the cause remanded for a new trial upon said issue of limitation only. The judgment is therefore

affirmed in part and reversed and remanded in part as above indicated.

Affirmed in part. Reversed and remanded in part.