GARCIA et al. v. STATE et al. (No. 6871.)

(Court of Civil Appeals of Texas. Austin. May 20, 1925.)

1. **Appeal and error** ⊚⟶1011(1)—Finding of trial court as to boundaries, based on conflicting evidence, not disturbed on appeal.

In suit to recover land as part of public domain, finding of trial court, as to location of disputed boundaries, based on conflicting evidence, will not be disturbed on appeal.

2. **Public lands** ⊚⟶221—Heirs, having Mexican grant resurveyed and patented, bound by resurvey.

Where heirs of original grantee from Mexican government had land resurveyed by district surveyor, and had it patented to them under his field notes, and sued under Act Feb. 11, 1860, c. 78, for confirmation of grant, and patent was issued to them under field notes of resurvey, they are bound by such survey, and original survey was abandoned.

3. **Public lands** ⊚⟶221 — Rule that surveys must be run by course and distance from known corners held applicable.

In suit by state to recover land as part of public domain, involving location of boundaries, originally surveyed under grant from Mexican government, and later resurveyed, rule that, in absence of natural or artificial marks showing error in course and distance, and in absence of proof as to how surveys were actually made, they must be run out by course and distance from known corners with which they connect by their callings, held applicable.

4. **Boundaries** ⊚⟶48(5)—Recognition of lines or corners by adjacent landowners, does not prevail as against state.

Recognition of lines or corners as boundary by adjacent landowners, if in fact it was not properly located, does not prevail against state suing to recover land as part of public domain.

5. **Boundaries** ⊚⟶25—Calls in junior surveys for monuments as corners of senior survey do not control.

Calls for monuments in junior surveys, as marking corners of senior survey, do not control in locating senior survey, when made 25 years or more after survey under which senior patent was issued, under mistaken belief that monuments in fact marked corners of senior survey.

6. **Boundaries** ⊚⟶25—Boundaries of senior survey cannot be extended or varied to satisfy calls of junior survey.

Boundaries of senior survey cannot be extended or varied to satisfy calls of junior survey.

7. **Appeal and error** ⊚⟶1033(9) — Appellant cannot complain that appellee should have recovered more land than it did.

In suit by state to recover land as part of public domain, where boundary was in dispute, appellants cannot complain that state should have recovered from them more land than it did.

8. **Trial** ⊚⟶392(4)—Refusal of findings of fact presenting appellants' theories of case, and conflicting with findings made by court, held proper.

In suit by state to recover land as part of public domain where court's findings were full and covered material facts of case, and were supported by evidence, refusal to make requested findings presenting appellants' theories of case, and conflicting with findings made was proper.

9. **Public lands** ⊚⟶173(7)—Owner of land held not entitled to priority of right to purchase land lying outside of tract covered by patent.

Under Rev. St. 1911, art. 5432, as amended by Acts 1919, c. 163, § 7 (Vernon's Ann. Civ. St. Supp. 1922, art. 5432), and section 8 of Acts 1919 (art. 5432a), owner of land, to which patent had been issued, *held* not entitled to priority in filing on and purchasing land lying outside that covered by patent, although he had claimed it, in view of failure to show that claimant had paid taxes on such land.

Appeal from District Court, Travis County; George Calhoun, Judge.

Action by the State against Eusebio Garcia and others. Judgment for the State, and defendants Eusebio Garcia and others appeal. Affirmed.

Pope, Pope & Pope and Mann, Neel & Mann, all of Laredo, A. S. Hardwicke, of Dallas, and Davis, Jester & Tarver, of Corsicana, for appellants.

---

⊚⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Dan Moody, Atty. Gen., R. J. Randolph, Asst. Atty. Gen., and G. B. Smedley, of Wichita Falls, for appellees the State and Thaxton & Anderson.

BAUGH, J. This suit was brought in the district court of Travis county, Tex., by the state of Texas, against the appellants to recover as a part of the public domain about 608 acres of land in Webb county, Tex., claimed by appellants as a part of the Ysidero Gutierres survey No. 592, commonly known in that county as the Los Ojuelos grant of two leagues of land. The case was tried to the court without a jury, and judgment rendered awarding the state the land sued for. From that judgment, this appeal is prosecuted.

The record is voluminous, and the briefs are long. Appellants bring more than 80 assignments of error and 31 propositions of law for review in their brief. There are, however, only two major issues in the case. First, what were the true boundaries of the Los Ojuelos grant; and, second, if a vacancy occurred, whether Eusebio Garcia, who had claimed to own such vacant land as a part of the Los Ojuelos grant, had a prior right as against the defendants Anderson and Thaxton to file on it and have it awarded to him. We shall not undertake to discuss all the questions raised, but only such as we deem material to a proper disposition of the case.

Some time in 1830, the Mexican government caused to be surveyed for Ysidero Gutierres a grant of two "sitios" or leagues of land in what is now Webb county, Tex. This survey was a rectangle 5,000 varas wide by 10,000 varas long running north and south and including within its boundaries an old well or spring called "Los Ojuelos," which was one of the old established natural objects of that territory. The Mexican surveyor, Canales, as appears to have been his custom, drew a sketch of the survey, designated the corners by name, and called for the distances between them. Gutierres, due to Indian raids, seems to have left the lands and returned to Mexico. It is not shown just when he did so. However, his heirs returned and located the grant after Texas became a state, and in 1856 caused it to be surveyed by one R. C. Trimble, district surveyor for Webb county, who filed his field notes in the general land office. Thereafter in 1861 the heirs of Gutierres filed a suit in the district court of Webb county against the state of Texas, seeking to have title to the old grant confirmed in them. This suit was filed in accordance with the act of February 11, 1860 (Laws 1860, c. 78), authorizing the confirmation of claims to lands between the Nueces and the Rio Grande rivers. Judgment was not rendered in this case however until July, 1871. It confirmed title to the two leagues in the heirs of Gutierres. Thereafter on June 10, 1873, the land was patented to the heirs of Ysidero Gutierres, under the field notes made by the surveyor Trimble in 1856, reciting that the patent was issued by virtue of the decree of the district court, dated July 14, 1871, a copy of which had also been filed in the general land office.

Neither the description of the corners contained in the Canales memoranda, nor that contained in field notes made by Trimble on which the patent was issued, is sufficiently definite to locate the corners on the ground. Nor can it be determined whether Trimble, in making his survey in 1856, followed the footsteps of Canales when he made the survey of 1830. Trimble did call, in his survey, for the northwest and southwest corners as the "original" corners of the grant, and it would appear that these corners corresponded in both surveys. But no such identity is shown as to the northeast and southeast corners. No useful purpose would be served by setting out these calls for corners in the different surveys and seeking to analyze their differences, for the reason that, as found by the trial court—

"the location of the Los Ojuelos survey, as claimed by the defendants Garcia et al. does not correspond with, and is not correct according to, the said survey and field notes made by R. C. Trimble, or the field notes purporting to have been made by Canales."

After setting out his findings of fact at length, the trial court reached the following conclusions:

"1. That the boundaries of the Los Ojuelos survey referred to in the judgment of confirmation by the district court of Webb county, and in the patent described, are to be fixed and determined in accordance with the survey made by R. C. Trimble, and the field notes of said survey made by said Trimble and filed in the land office and the field notes contained in the patent.

"2. That the Los Ojuelos survey as surveyed by Trimble, and as patented, would be most certainly and correctly located by beginning at the old Los Ojuelos well or spring running thence N. 88 degrees and 15' west 1,600 varas to a point in an old road; thence N. 4,900 varas to a point on the slope of a rocky hill for the N. W. corner; thence E. 5,000 varas to a point 145 varas W., and about 195 varas S. of a round dry pond for the N. E. corner; then returning to the said point in the old road and running thence S. 5,590 varas to the small round stone hill, or 5,662 varas to the high round rocky hill for the S. W. corner; and by constructing the S. and E. lines by course and distance from the above-described N. E. and S. W. corners. However, because the Los Ojuelos when its boundaries are so fixed conflicts on its north end for a distance of about 600 varas with several junior surveys and conflicts on its west side for a distance of about 1,500 varas with a number of junior surveys, and because the north line of the Los Ojuelos survey, as claimed by the defendants, Garcia et al. much more nearly corresponds to the true location of the north line of the survey than

does the south line of the survey as claimed by defendants, Garcia et al., correspond to the true south line, I conclude that for the purpose of arriving at an equitable judgment in this case, and in order to avoid the creation of conflicts with junior surveys, the boundaries of the Los Ojuelos survey should be fixed by beginning at a corner of the Julia A. Flippen survey No. 771 at what is claimed by defendants, Garcia et al., as the N. W. corner of the Los Ojuelos survey, running thence S. with the E. lines of the junior surveys 10,000 varas; thence E. 5,000 varas, thence N. and parallel with the W. line of the Los Ojuelos 10,000 varas; thence W. with the S. line of the junior surveys 5,000 varas to the place of beginning."

As thus located by the court, the west line of the survey was in fact only about 125 varas west of the old spring or well, instead of 1,600 varas, as indicated.

[1] Appellants contend, however, that their grant, as originally surveyed by Canales, was by him marked at its northeast, southeast, and southwest corners by large stone monuments set in the ground; that Gutierres was placed in juridical possession of the lands so marked; that such corners were well and notoriously known in 1871, when the land was decreed to his heirs; and that such boundaries have continuously been recognized for more than 50 years. This contention is based upon the requirements of the laws of Tamaulipas at that time that just such corners be erected as landmarks (see State v. Palacios [Tex. Civ. App.] 150 S. W. 237); the formal method required by Spanish law of placing a grantee of public lands in juridical possession on the grounds with appropriate ceremonies (see Malarin v. United States, 68 U. S. [1 Wall.] 282, 17 L. Ed. 595; United States v. Pico, 72 U. S. [5 Wall.] 536, 18 L. Ed. 695); and the testimony of some Mexican witnesses that these monuments were on the ground at the corners claimed by Garcia in 1880 or even a few years prior thereto. The decree of the district court of Webb county, entered in 1871, does recite "that the plaintiffs or their ancestor or original grantee had been placed in juridical possession, that the locality and boundary of said land are well defined and well and notoriously known," etc. Junior surveys made in 1881 also call for these stone monuments as marking some of the corners of the Gutierres or Los Ojuelos grant. In brief, there was evidence from which the trial court could have found the boundaries of the Los Ojuelos as contended for by appellants, but there was also evidence to the contrary, and there being a conflict, we will not disturb the trial court's findings.

[2, 3] When the heirs of Gutierres returned to the land from Mexico in 1855 or 1856, had it resurveyed by the district surveyor, Trimble, had the land patented to them under his field notes, accepted such patent, and are claiming under it, they are bound by his

274 S.W.—21

survey, and the survey made by Canales is immaterial. Their title and boundaries thus became fixed and determined under the resurvey, and the old Canales survey as such was abandoned. Sullivan v. State, 41 Tex. Civ. App. 89, 95 S. W. 648; Hamilton v. State (Tex. Civ. App.) 152 S. W. 1117; Montgomery County v. Angier, 32 Tex. Civ. App. 451, 74 S. W. 957. We think there was sufficient competent evidence to warrant the court's conclusion that the survey could more correctly be located some 1,500 varas west and some 600 varas north of where appellants contend it was located, and where the court in equity adjudged it to be. This of necessity required the court to find against the location contended for by appellants. But to avoid conflicts, and to do equity, the trial court established the northwest corner as claimed by appellants. He was not required, however, to accept the other corners claimed. Nowhere did the Trimble field notes, the decree of the district court of Webb county, nor the patent call for any stone monuments on the ground as corners. If they had been there marking these corners, as appellants insist, when the Trimble survey was made, and when the decree of 1871 was rendered, it is very probable that they would have been called for in those instruments. As stated in Post v. State (Tex. Civ. App.) 169 S. W. 401:

"In the absence of natural or artificial marks called for in the field notes showing error in course and distance, and in the absence of proof as to how surveys were actually made, they must be run out course and distance from known corners with which they connect by their callings."

[4-6] This rule is well established in this state, and under the evidence we think it is clearly applicable in this case. See, also, Brooks v. Slaughter (Tex. Civ. App.) 218 S. W. 632; Kerr v. State (Tex. Civ. App.) 205 S. W. 474; Prairie Oil & Gas v. State (Tex. Civ App.) 229 S. W. 585; State v. Talkington (Tex. Civ. App.) 274 S. W. 314; Reast v. Donald, 84 Tex. 653, 19 S. W. 795. The evidence does not show who placed these monuments on the ground, nor when they were placed there. Nor does the recognition of a line or corner as a boundary by adjacent landowners, if in fact it was not properly located, prevail as against the state. Ratliff v. Burleson (Tex. Civ. App.) 25 S. W. 984. Nor do the calls for these monuments and corners marked by them in junior surveys control. In some cases calls in junior surveys for corners of senior surveys may be admissible as circumstantial, but they are not controlling. In the instant case these junior surveys appear to have been made by other surveyors some 25 years or more after the Trimble survey of 1856. And it was not shown that such surveyors knew where Trimble had run his lines. The trial court found,

and there is evidence to sustain his finding, that such calls in junior surveys were made under the mistaken belief of the surveyors that these monuments did in fact mark the corners of the Los Ojuelos grant. But it is well ·settled that the boundaries of a senior survey cannot be extended or varied to satisfy the calls of a junior survey. Jones v. Burkitt (Tex. Civ. App.) 150 S. W. 275; State v. Post (Tex. Civ. App.) 169 S. W. 401; State v. Dayton Lumber Co. (Tex. Civ. App.) 159 S. W. 397.

[7] The appellants are not in a position to complain that the judgment does not strictly conform to the trial court's findings, that the Los Ojuelos grant could more correctly have been located some 1,500 varas further west and some 600 varas further north than his judgment did locate it. The judgment located its northwest corner where appellants claimed it to be, and followed their west and north lines. It followed these lines by course and distance instead of running to the monuments claimed by appellants as corners, and which would give them an excess not included in the original field notes. Had he located it further west and north, the state would have recovered from the claimants more than 3,000 acres of land as vacant instead of the 608 adjudged. But the state is not complaining of the judgment rendered. And appellants, Garcia et al., cannot complain that the state should have recovered from them much more land than it did recover. See Harris County Irrigation Co. v. Hornberger, 42 Tex. Civ. App. 450, 94 S. W. 145; F. & M. State Bank v. Guffey (Tex. Civ. App.) 255 S. W. 462.

[8] Nor was it error for the trial court to refuse the additional findings of fact requested by appellants. These requested findings appear clearly to be only the appellants' conclusions drawn from their own evidence, or else a mere statement of the evidence itself. The court's findings were full and covered all the material facts of the case. A full statement of facts accompanies the record, and it does not appear that any injury has been done appellants. The requested findings, for the most part, only present appellants' theories of the case and conflict with the findings made by the court. It is unnecessary to set out here such findings made. They are supported by the evidence, and the court properly refused the requested findings in conflict therewith. Magnolia Petroleum Co. v. City of Port Arthur (Tex. Civ. App.) 209 S. W. 803.

[9] The second issue raised is the contention of appellant Garcia, that under article 5432, R. S. 1911, he was entitled as therein provided, and as a claimant holding and claiming said land under Spanish or Mexican title, to prior right, after recovery of the land by the state, to file on and purchase said lands as against Thaxton and Ander-

son. We do not deem it necessary to determine whether Garcia would have had such right under article 5432 prior to its amendment in 1919. The Thirty-Sixth Legislature by chapter 163, Acts of 1919, section 7 (Vernon's Ann. Civ. St. Supp. 1922, art. 5432) completely rewrote said article 5432, and omitted therefrom that portion relating to Mexican or Spanish titles, and whatever rights Garcia had to priority, at the time of the trial, were fixed by the law as amended in 1919. The only provision in the act of 1919 as to such priority of claimants is found in section 8 (article 5432a) thereof immediately following the amended article 5432, which was section 7 of that act. Said section 8 reads as follows:

"*Prior Right to Purchase Privately Surveyed Land for Which Patent Cannot Issue.*—If for any cause a patent cannot be lawfully issued upon a tract of land heretofore surveyed by virtue of any private right, and such land shall be claimed in good faith by one by virtue of an original right, or by a chain of title from the original holder of such right duly executed before the passage of this act, and if such claimant has paid all taxes, he shall have the preference right to purchase the survey as surveyed school land at any time within 60 days after the date of the notice from the land office to the claimant that patent cannot be issued thereon, but if the said land should not be so purchased the commissioner shall place the same on the market for sale as other surveyed public free school land."

This section is also brought forward as article 5432a, V. S. 1922 Supp. to Revised Statutes. This section was manifestly intended to apply to those who, prior to its passage, had caused lands to be surveyed to them under some claim or right, had been in possession thereof in good faith and paying taxes thereon, but to which, for some reason, a patent could not issue. No such facts occur in this case. This was a suit to locate the correct boundary of the Los Ojuelos grant. That grant had long since been patented. If the strip in controversy was within the confines of that survey, it was, of course, patented land, and Garcia owned it already. If not within that survey it was vacant land and had not been surveyed in 1919 when said act was passed. Nor is this land in controversy land to which a patent could not issue. Patent was issued to all the land Garcia was entitled to under his old survey made by Trimble, and since the land here involved was outside of that survey Garcia had no claim to it. Nor does the record show that Garcia had ever paid taxes on this 608 acres of land. On the contrary it shows that he had paid only on the two leagues, or on the unalienated portion thereof, having sold a part of it, actually called for within the field notes of the original survey, whereas he was claiming an excess of 608 acres over two leagues. Under

these circumstances Garcia clearly does not come within the provisions of the law above quoted, nor was he entitled to prior rights to purchase the land in controversy. The judgment of the trial court deprived no one of any quantity of land called for within the field notes of the original survey made by Trimble, but merely awards the state as vacant land a claimed excess attempted to be included by appellants within landmarks which they insist establish the boundaries of the Los Ojuelos grant.

Finding no reversible error, the judgment of the trial court is affirmed.

Affirmed.